684 So.2d 359 (1996)
MED EXPRESS AMBULANCE SERVICE, INC.
v.
EVANGELINE PARISH POLICY JURY and J. William Pucheu, Evangeline Parish District Attorney.
No. 96-CA-0543.
Supreme Court of Louisiana.
November 25, 1996.
Rehearing Not Considered December 30, 1996.
*361 Richard P. Ieyoub, Attorney General, J. William Pucheu, Ville Platte, Allen Bruce Rozas, for Applicant.
Trent Stuart Brignac, Joffre Wendel Fusilier, Ville Platte, for Respondent.
William J. Doran, Jr., Toni Manning Higginbotham, Baton Rouge, for Police Jury Association of Louisiana Amicus Curiae.
JOHNSON, Justice.[*]
Evangeline Parish Code Art. II, §§ 24-20 through 24-32 set forth a regulatory scheme for ambulance services within Evangeline Parish. Under these provisions, an owner or operator of an ambulance service must obtain a permit from the Evangeline Parish police *362 jury president or his designee to provide services within Evangeline Parish on a parish wide basis. Evangeline Parish Code Art. II, § 24-21. Seven criteria are considered in determining whether a permit will be issued, including whether the applicant has a certificate from the Emergency Medical Service Advisory Board[1] certifying that the "public convenience and necessity" require the proposed ambulance service. Evangeline Parish Code Art. II, § 24-23.
In October of 1994, Med Express Ambulance Service, Inc. (Med Express), a corporation certified by the State of Louisiana to provide emergency and non-emergency medical services,[2] sought to obtain a permit from the Evangeline Parish Police Jury to operate an ambulance service in Evangeline Parish. At the time, all parish wide emergency and nonemergency ambulance services in Evangeline Parish were provided by a single operator, Acadian Ambulance & Air Med Services, Inc. (Acadian Ambulance Service). In January of 1995, the Emergency Medical Service Advisory Board determined that there was no need for additional ambulance services on a parish wide basis in Evangeline parish. As a result, Med Express was not issued a certificate of "public convenience and necessity" by the Emergency Medical Service Advisory Board and, consequently, Med Express was denied a permit by the Police Jury. Subsequently, Med Express reasserted its desire to obtain a permit. The Police Jury did not act on Med Express' second application for a permit because it lacked a certificate from the Emergency Medical Service Advisory Board.[3] In response, Med Express filed a petition for a temporary restraining order and a permanent injunction seeking to enjoin the Police Jury and any other authority from interfering with Med Express' operation of a parish wide ambulance service.[4] Moreover, Med Express sought a declaration that the Police Jury ordinances regulating ambulance service applications were unconstitutional.
The Police Jury filed an exception of nonjoinder of an indispensable party; namely, the Attorney General. The Police Jury maintained that its ordinances were enacted pursuant to La. R.S. 33:4791.1 and that a constitutional challenge of the ordinances was, in fact, a constitutional challenge of La. R.S. 33:4791.1 which required joinder of the Attorney General. After a hearing, the trial judge concluded that La.R.S. 33:4791.1 did not apply[5] to the present matter and, thus, denied the Police Jury's exception.
Shortly thereafter, a second hearing was held and the trial judge granted Med Express' preliminary injunction and ordered the Police Jury to grant Med Express' application for a permit to operate throughout Evangeline Parish. The trial judge held that Evangeline Parish Code Art. II, §§ 24-20 through 24-32, "particularly § 24-22 and § 24-23, are unduly vague and ambiguous and unconstitutional and violative of the Due *363 Process and Equal Protection clauses of both the Federal and State constitutions, and therefore ruled struck down, void, and without effect...." The trial judge reasoned, in part, that the ordinances "prohibit[ed] fair competition" and, therefore, violated the "constitutional right of free enterprise, and equal opportunity to make a living." The Evangeline Parish Police Jury applied to this court for writs. The application was granted and docketed as an appeal.[6]
The issues for our consideration are whether Evangeline Parish code Art. II, §§ 24-20 through 24-32:(1) are unconstitutional under the Equal Protection or Due Process clauses of the federal or state constitution or (2) are unconstitutionally vague.
In Louisiana, when a police jury or local government authority has not adopted a home rule charter or by vote of the electorate been empowered to exercise all powers not denied by statute or the constitution that police jury is a "creature and subordinate political subdivision of the State and as such only possesses those powers conferred by the State's Constitution and statutes." American Waste and Pollution Control Co. v. St. Martin Parish Police Jury, 609 So.2d 201 (La.1992). As a non-home rule charter political subdivision, the Evangeline Parish Police Jury can exercise only those powers expressly granted by the constitution or by the legislature. Under La. R.S. 33:1236(32), the police jury has, among other things, the power to contract for and regulate the operation of ambulance services. La. R.S. 33:4791[7] further defines this power and provides in pertinent part:
A. Notwithstanding any other provision of law to the contrary, the governing authority of each municipality within the state of Louisiana shall have the power to adopt ordinances for the regulation of ambulance service operated by private individuals or companies within the corporate limits of said municipality.
More important to the present inquiry, La. R.S. 33:4791.1 provides in pertinent part:
A. The legislature hereby finds and declares the following:
(1) The provision of consistently high quality emergency medical care, and any and all aspects attendant to ambulance operation to be provided within a medically acceptable response time is essential to the health, safety, and welfare of the state and its people.
(2) Privately operated ambulance services providing patient transportation service or emergency medical services fulfill a vital health and safety need within the state. The operation of such ambulance services operated within the jurisdiction of municipalities and other local governing authorities enables the state to provide the benefits of privately operated, demand-responsive ambulance services to its people.
(3) The economic viability and stability of such privately operated ambulance services are consequently a matter of statewide importance.
(4) The policy of this state is to promote medically acceptable and reliable, privately operated ambulance services, the furnishing of emergency medical services, and any and all aspects attendant to ambulance operations in order to provide the benefits of that service to its citizens. In furtherance of this policy, the legislature recognizes and affirms that the regulation of such privately operated ambulance service is an essential governmental function.
(5) The policy of this state is to provide that municipalities and other local governing authorities may regulate privately operated ambulance services, the furnishing of emergency medical services, and any and all aspects attendant to ambulance operation. It is further the policy of the state not to subject any local governing authority or its officers or members to liability under federal antitrust laws.

*364 B. Every municipality or other local governing authority may protect the public health safety, and welfare by licensing, controlling, and regulating by ordinance or resolution privately operated ambulance services, the furnishing of emergency medical services, and any and all aspects attendant to ambulance operations within the jurisdiction of the municipality or other local governing authority. Every municipality or other local governing authority is empowered to regulate the following:
(1) Entry into the business of providing ambulance service, including emergency medical services, within the jurisdiction of that municipality or local governing authority.
(2) Rates charged for the provision of ambulance services, in accordance with federal law relative to medical reimbursement, including emergency medical services.
(3) Establishment of safety and insurance requirements.
(4) Any other requirement adopted to ensure safe, reliable, and responsive ambulance service, even if such requirement is anticompetitive in effect.
(5) Limited or exclusive access by such ambulance service for the provision of emergency medical services to the 911 or other emergency communications dispatch of the municipality or other local governing authority.
(6) The establishment of safety and insurance requirements even if such requirements reduce the number of such private ambulance services that otherwise would operate within the jurisdiction of the municipality or other local governing authority.
* * * * * *
D. Any municipality or other local governing authority is authorized to carry out the provisions of this Section as acts of government on behalf of the state as sovereign and, to the extent the governing authority deems necessary or appropriate, is further authorized to displace competition and provide a monopoly public service. All immunity of the state of Louisiana from liability under antitrust law is hereby extended to any municipality or other governing authority acting within the scope of authority contained in this Section and, when so acting, a municipality or other local governing authority shall be presumed to be acting in furtherance of state policy.
* * * * * *
The legislature has recognized the need for local governing authorities, such as the Police Jury, to protect the public health, safety and welfare of its citizens through regulating ambulance services. La. R.S. 33:4791.1 B. Moreover, the legislature has empowered local governing authorities to regulate entry into the business of providing ambulance services, La. R.S. 33:4791.1 B(1), including establishing any requirement needed to "ensure safe, reliable, and responsive ambulance service, even if such requirement is anticompetitive in effect." La. R.S. 33:4791.1 B(4).
The Police Jury enacted ordinances, Evangeline Parish code Art. II, §§ 24-20 through 24-32, regulating parish wide ambulance services which have not been shown to be inconsistent with the La. R.S. 33:4791 et seq. The ordinances require obtaining a permit from the police jury president or his designee. Art. II., § 24-21.[8] Applications for permits are made on forms prescribed by the police jury president. Art. II, § 24-22.[9] *365 In determining whether to issue a permit, the police jury president is required to consider: (1) the applicant's probable performance and quality of services offered, (2) the applicant's experience within the parish, (3) the applicant's financial ability to respond in damages, (4) whether the required insurance has been procured, (5) whether the applicant satisfies the vehicle requirements, (6) compliance by the applicant with other applicable laws and ordinances, and (7) whether the applicant has obtained a "certificate from the emergency medical service advisory board certifying that the public convenience and necessity require the proposed ambulance service." The phrase "public convenience and necessity" is defined as:
An existing current and permanent need for additional ambulance service in the parish and the existing ambulance operators currently holding valid permits to operate within the parish, after being notified by the police jury of such need, fail to provide the additional service determined necessary, within the period of time provided by the police jury to fill such need.
Art. II, § 24-20.

EQUAL PROTECTION DUE PROCESS ANALYSIS
Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in areas of social and economic policy, a statutory classification which does not proceed along suspect[10] or semi-suspect lines,[11] nor infringe on fundamental rights,[12] need only be rationally related to a legitimate governmental interest. City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Similarly, the crux of the Due Process Clause of the Fourteenth Amendment, is protection from arbitrary and unreasonable action and when the ordinance or statute does not affect fundamental rights, but rather is merely economic or social regulation, it need only have a rational relationship to a legitimate governmental interest. Id.
Acting pursuant to the Evangeline Parish Police Jury Ordinance, the Police Jury has in effect a single operator system thereby depriving Med Express of the freedom to contract with potential customers and the freedom to engage in a lawful business on a parish wide basis in Evangeline Parish. The medical emergency ambulance business has shown disparate levels of service between emergency and non-emergency cases. The non-emergency services generate more revenue for the companies. Therefore, in many areas, citizens have experienced delays in delivery of emergency services. This is a national trend and therefore one could argue that the smaller towns would experience an even greater hardship. As a result of this, a "public utility model" was created. This model in essence creates a monopoly for one emergency service provider in return for *366 what is basically a fixed or guaranteed contract. This serves the public benefit in that expensive equipment which is needed for emergency services are available and remain the property of the Parish.
The problem in this instance according to the trial court is that the ordinance is being applied in an arbitrary fashion. Med Express was granted permission to operate in Ville Platte, LA which is located within Evangeline Parish, but not throughout the Parish. Therefore, the Court reasoned that Med Express should be allowed to operate parish wide in Evangeline.
This Court reasons that the ordinance does not discriminate against a suspect or semi-suspect class, nor does it impinge on a fundamental right. There is no absolute right to contract free of state regulation under the police power. See e.g., New Motor Vehicle Bd. v. Orrin W. Fox Co., 439 U.S. 96, 106-07, 99 S.Ct. 403, 410-11, 58 L.Ed.2d 361 (1978). Therefore, the rational relationship test is the appropriate standard to employ to scrutinize the Evangeline Parish ordinances. Under this level of scrutiny, the ordinance is presumed constitutional. Dukes, 427 U.S. at 303, 96 S.Ct. at 2517, 49 L.Ed.2d 511.
Protecting the public health, safety and welfare of its citizens is certainly a legitimate governmental interest. Med Express offered no evidence to show that the ordinances, which are presumed constitutional, are not rationally related to this legitimate government interest. Moreover, this court cannot say that the ordinances which allow the Police Jury to deny permits to applicants based on the criteria listed in the ordinances, including the requirement of obtaining a certificate from the Emergency Medical Service Advisory Board that the "public convenience and necessity" require the proposed additional ambulance service, are not rationally related to furthering legitimate governmental interests. Therefore, we uphold the constitutionality of the ordinances under the Fourteenth Amendment's Equal Protection and Due Process Clauses of the federal constitution.
The rights guaranteed under our state constitution are not always synonymous with federal constitutional rights. Crier v. Whitecloud, 496 So.2d 305 (La.1986). In Sibley v. Bd. of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), this court rejected the three-tiered federal system standard of equal protection review for interpreting and applying the equal protection clause of our state constitution found in Article I, § 3.[13] Interpreting Art. I, § 3, this court held in Sibley that:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.
Sibley, 477 So.2d at 1107-08. Under the third level of scrutiny, the law creating the classification is presumed constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional. Manuel v. Louisiana, 95-2189, p. 5 (La.7/2/96), 677 So.2d 116, 120.
The ordinances create advantages for existing ambulance service operators by requiring the police jury to notify existing operators of the need for additional services and giving the existing operators time to fulfill such needs before a "public convenience and necessity" certificate will be issued to applicants seeking permits to provide *367 additional or new services in Evangeline parish on a parish wide basis. The disadvantage created by the ordinance is not based on any classification enumerated in Article I, § 3. Therefore, the ordinance must be upheld unless Med Express shows it does not further an appropriate governmental interest. Since Med Express offered no evidence to meet this burden, the ordinances are presumed constitutional under Article I, § 3 of our state constitution. The health, safety, and welfare of citizens are appropriate government interests. It seems reasonable to believe that the ordinances regulatory scheme and application process, including requiring a certificate of "public convenience and necessity," would further these interests. See, Gold Cross Ambulance and Transfer v. City of Kansas City, 705 F.2d 1005 (8th Cir.1983)(discusses how a single provider system eliminates the incentive created by free-market delivery of ambulance service by private companies to neglect emergency ambulance service in favor of more profitable nonemergency business). Therefore, we hold that the ordinances do not violate Article I, § 3 of our state constitution. Similarly, since the ordinances do not affect a fundamental right and do not constitute arbitrary and unreasonable action, bur rather are rationally related to a legitimate government interest, they do not violate Article I, § 2's due process protections. See, PANO v. City of New Orleans, 94-1078, p. 16 (La.1/17/95), 649 So.2d 951, 963.

VAGUENESS
A law is fatally vague and offends due process when a person of ordinary intelligence does not have a reasonable opportunity to know what is prohibited so that he may act accordingly or if the law does not provide a standard to prevent arbitrary and discriminatory application. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497-99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Laws regulating businesses are held to a lesser standard of "definiteness" than statutes imposing criminal penalties. Carlin Communications, Inc. v. South Central Bell Telephone Co., 461 So.2d 1208, 1214 (La.App. 4th Cir.1984).
Economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.
Village of Hoffman Estates, 455 U.S. at 498-99, 102 S.Ct. at 1193-94, 71 L.Ed.2d 362. To sustain a challenge for vagueness, the opponent of the ordinance must prove that the ordinance is vague "not in the sense that it requires a person to conform ... to an imprecise but comprehensible normative standard, but rather in the sense that no standard conduct is specified at all" Village of Hoffman Estates, 455 U.S. at 497, n. 7, 102 S.Ct. at 1191, n. 7, 71 L.Ed.2d 362. Med Express did not meet its burden.
The focus of Med Express' argument is that the ordinance fails to provide sufficient guidance for uniform application in issuing permits. However, by reading the ordinance, an applicant knows that a certificate of public convenience and necessity must be obtained from the Emergency Medical Service Advisory Board as part of the application process. The ordinance provides objective standards for determining whether to issue a certificate of public convenience and necessity. Specifically, the members of the Emergency Medical Service Advisory Board must determine whether there is "an existing current and permanent need for additional ambulance service in the parish...." Art. II, § 24-20. After such a determination is made, the existing operators must be notified of the need and given the opportunity to provide the additional services. If the existing operator fails to provide the additional services within the time provided by the police jury, additional ambulance services are needed and the Emergency Medical Service Advisory Board issues a certificate of public convenience and necessity. Art. II, § 24-20. The police jury must consider whether the applicant has obtained a certificate from the Emergency Medical Service Advisory Board coupled with six additional criteria in determining whether to issue a permit. Art. II, *368 § 24-23. The ordinances do not grant the police jury absolutely free, unfettered and unguided discretion to grant or deny applications for permits. Rather, the ordinances provide sufficient clarity to remove the decision of whether to grant or deny a permit from the police jury's subjective whim. Accordingly, the ordinances are not unconstitutionally vague.
In light of the evidence presented, our examination of Evangeline Parish Code Art. II, §§ 24-20 through 24-32 leads to the conclusion that the trial judge erred in finding that these provisions are unduly vague and ambiguous and violative of the due process and equal protection clauses of both the federal and state constitutions.

DECREE
For the reasons assigned, the ruling of the district court declaring Evangeline Parish Code Art. II, § 24-20 through 24-32 unconstitutional is vacated and set aside; the judgment granting Med Express Ambulance Service, Inc. a preliminary injunction and ordering the Evangeline Parish Police Jury to issue a permit to Med Express Ambulance Service, Inc. is hereby reversed. Plaintiff's action is dismissed.
NOTES
[*] Watson, J. not on panel. Rule IV, Part 2, § 3.
[1] The emergency medical service advisory board is "[a] board comprised of the administrators or chief executive officers of those hospitals providing twenty-four-hour emergency service, the President of the Evangeline Parish Medical Society and the police jury president."
[2] According to its petition, Med Express is certified to operate and is currently operating in the Parishes of St. Landry, Rapides, Winn, and Grant. Additionally, Med Express is certified to operate and is currently operating in the cities of Winnfield, Dodson, Colvin, Georgetown, Colfax, Montgomery, Pollack, Woodsworth, Chenneyville, Opelousas, Eunice, Alexandria, Pineville, Ball, Boyce, Lecompte, Glenmora, Forest Hill, Melville, Port Barre, Arnaudville, Leonville, Sunset, Grand Coteau, Cankton, Palmetto, Krotz Springs, and Washington. Med Express is also certified to operate and currently operating in Evangeline Parish, but only within the city limits of Ville Platte, the parish seat of Evangeline.
[3] In its brief, Med Express maintains that on October 9, 1995, the police jury granted Med Express a permit which was revoked on October 12, 1995. However, the trial judge concluded that the second application was not acted upon and the record evidences that this factual conclusion is not manifestly erroneous.
[4] The petition also sought a preliminary injunction to prohibit the Evangeline Parish District Attorney from preventing Med Express from providing ambulance services. The trial judge granted the District Attorney's exception of no cause and no right of action dismissing the District Attorney as a party from this suit.
[5] The constitutionality of La. R.S. 33:4791 et seq. was not challenged by Med Express and was not addressed by the trial judge.
[6] 96-0543 (La.3/29/96), 671 So.2d 306. See La. Const. art. 5, § 5(D)(1).
[7] There was no argument or evidence that the ordinances were not enacted pursuant to La.

R.S. 33:4791. We find that the trial judge erred in finding that these provisions are not relevant to the present inquiry.
[8] Art. II, § 24-21 provides:

No owner or operator of an ambulance shall respond to any request for ambulance services originating within the parish without first obtaining a permit to operate an ambulance service from the police jury president or his designee.
[9] Art. II, § 24-22 provides:

Applications for permits shall be made to the police jury president upon forms prescribed by him and shall include:
(1) The name and address of the owner or operator of the ambulance.
(2) A description of the ambulance(s), including the make, model, year of manufacture, Louisiana license number for the current year, motor and chassis number and a statement regarding the length of time the vehicle has been in use.
(3) The location and description of the place or places from which such ambulance(s) is intended to operate.
(4) Proof of insurance in such form and in such amounts as required by this article.
(5) Financial statements, including balance sheets and profit and loss statements, for a period of not less than two (2) years or, in the case of an applicant for a permit who has not been providing ambulance service for a minimum of two (2) years, financial statements, including the balance sheet sand profit and loss statements, and federal tax returns of the principals of such applicant, for a period of not less than two (2) years.
(6) Such other information as the police jury president shall find reasonably necessary to a fair determination of whether the provisions of this article have been complied with.
[10] Laws drawing lines along suspect classifications are subject to strict scrutiny and must be necessary to achieve a compelling state interest. E.g. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971)(alienage); McLaughlin v. Florida, 379 U.S. 184 85 S.Ct. 283, 13 L.Ed.2d 222 (1964)(race); Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (ancestry).
[11] Laws drawing lines along semi-suspect classifications are subject to intermediate scrutiny and must substantially further an important state interest. E.g. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968)(illegitimates); Mississippi Univ. for Women v. Hogan, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982)(gender).
[12] Like laws drawn along suspect lines, laws impinging on fundamental rights are subject to strict scrutiny. E.g., Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)(rights guaranteed by the First Amendment); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)(right to vote); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)(right of interstate travel).
[13] Article I, § 3 provides in pertinent part:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition or political ideas or affiliations.