liCOOKS, Judge.
Defendant and his attorney (“Appellants”) contest the trial court’s imposition of one thousand dollars in fines against them, which resulted from reciprocal motions for sanctions by the parties in the matter below. Appellants further submit the trial court erred in failing to cast plaintiffs counsel for sanctions as originally requested, and ask us to consider whether the trial court erred in finding Louisiana Code of Evidence Article 510 violates the Constitutions of the United States of America and the State of Louisiana. Upon consideration of the record and applicable jurisprudence, ^we affirm the trial court’s rulings.
FACTS
This appeal is only the latest in a series of controversies involving Brenda Sanders and Brent S. Gore. Sanders filed a legal malpractice suit against Gore, her former attorney, seeking damages for monetary loss and mental anguish allegedly caused by Gore’s misconduct. During the course of discovery, Gore, through his attorney, propounded interrogatories and requests for production of documents to Sanders requesting copies of *684 all records or reports concerning her physical or mental conditions. The requested records consisted of psychiatric reports, the impressions of various mental health care professionals regarding Sander’s activities and state of mind, and the recounting of private conversations with her, by those professionals during the course of her treatment. Initially, Sanders refused to produce the requested material. Gore, however, filed a Motion to Compel, and Sanders was ordered to produce copies of her records by August 30,1996.
Interestingly enough, there is yet another facet of this dispute. The Louisiana Attorney General’s Office conducted a criminal investigation of Sanders, spurred by Gore’s allegations that she “willfully, maliciously and repeatedly” stalked him and his wife, and attempted to extort money from him. Upon receipt of Sanders’ medical records (which, as noted earlier, were requested in conjunction with her civil suit), Gore’s attorney, Dee D. Drell, provided him with copies of the allegedly privileged information. The trial court found both Gore and his wife voluntarily provided Sanders’ medical records to an assistant attorney general for the State at a meeting in New Orleans on the weekend of September 11-14, 1996. On September 18, 1996, a Concordia Parish grand jury returned two indictments against Sanders; charges are currently pending on the criminal docket of the Seventh Judicial District Court. IsAdditionally, Drell included direct references to personal and presumptively privileged communications from Sanders’ records, which had not yet been introduced as trial evidence, in a memorandum to the court on September 6,1996.
Immediately thereafter, counsel for Sanders filed motions for sanctions and a protective order regarding the disclosure of her medical records. The trial court issued the protective order and fixed for hearing the Motion for Sanctions. Gore filed his own Motion for Sanctions averring Sanders’ motion was without merit. Both motions were heard on December 2,1996.
On January 20, 1997, the trial court ruled on the motions for sanctions imposing fines in the amount of $500.00 each against the defendant and his attorney. In the trial judge’s opinion:
[TJhese reports were used improperly, contrary to the law and contrary to proper legal practice. Certainly Ms. Sanders did not intend for her medical reports to be used against her to get her indicted by a Grand Jury. There has been blatant abuse of the purpose of which the reports were ordered by the Court.
Because the discovery statutes provide “any attorney who violates a provision of this article shall be subject to sanctions,” the trial court sanctioned Gore, who, as previously stated, is an attorney. Drell was subjected to a fine as well because the trial court considered “filing [the] memorandum with the judge” an abuse of the fact-finding process.
Gore and Drell appeal, arguing La.C.E. art. 510, the pertinent statute, is “unconstitutionally vague as written and violates the Due Process Clauses of both the Constitution of the United States of America and the Constitution of the State of Louisiana.” They argue there was no way they could have known that what they did was prohibited by the Code of Evidence. Ostensibly, they argue the pertinent article can be interpreted more than one way. According to their understanding of La.C.E. |4art. 510, Sanders waived any privilege she had regarding her medical records. Thus, the appellants say, such waiver renders acceptable “any disclosure of those records post-discovery.”
ISSUES and DISCUSSION
In their assignments of error, the appellants submit three basic arguments: 1) La. C.E. art. 510 is unconstitutionally vague; 2) the trial court erred in casting them for sanctions pursuant to Sanders’ motion; and, 3) the trial court erred in not easting Sanders’ counsel for sanctions pursuant to their motion. We elect to begin by discussing the constitutionality of La.C.E. art. 510.
La.C.E. art. 510 provides, in relevant part:
B. (1) General rule of privilege in civil proceedings.
*685 In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representatives, his health care provide, or their representatives.
(2) Exceptions. There is no privilege under this Article in a non-criminal proceeding as to a communication:
(a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in judicial or worker’s compensation proceeding.
* * * * *
(c) When the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense....
ífc ^
D. Who may claim the privilege. In both civil and criminal proceedings, the privilege may be claimed by the patient or by his legal representative ...
* Hs ❖ ‡ * ❖
|SE. Waiver. The exceptions to the privilege set forth in Paragraph B(2) shall constitute a waiver of the privilege only as to testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure Article 1421 et ■ seq., or pursuant to R.S. 4,0:1299 or R.S. 13:3715.1.
5^5 %
G. Sanctions. Any attorney who violates a provision of this Article shall be subject to sanctions by the Court.
>}: ij: ‡ sfe
(Emphasis added.)
According to the appellants, article 510 is vague, thus “any imposition of sanctions pursuant to the directives of that article may be of no effect.” They contend article 510 and corresponding article 1421 of the Louisiana Code of Civil Procedure do not “give the person of ordinary intelligence a reasonable opportunity to know that referencing portions of properly obtained discovery materials to law enforcement officials is prohibited.” Because the statute fails to provide instances of prohibited acts, yet is clearly penal in nature, the appellants argue La. C.E. art. 510 “impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, ■ with the attendant dangers of arbitrary and discriminatory application.” Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972). The following excerpt from Judge Yelverton’s opinion in West Central Louisiana Entertainment, Inc. v. City of Leesville, 594 So.2d 973, 976 (La.App. 3 Cir.1992), is cited, to wit:
Words and phrases used in statutes must not be so vague and indefinite that any penalty prescribed for their violation would constitute a taking of liberty or property without due process of law.
We agree with the appellants that the legislature would have done well by providing examples of what may or may not be done with information once it is received through Rthe discovery process. Matters are further confused by the dearth of jurisprudence interpreting La.C.E. art. 510 and related statutes. Perhaps the statute’s redactors should have clarified the extent to which a privilege is relinquished once a party has either voluntarily waived the privilege or been compelled to 'submit confidential information. However, rewriting poorly drafted legislation is not within the courts’ powers. Because La.C.E. article 510 does articulate a comprehensible and logical standard, we cannot say the statute is so vague that it is unconstitutional. A law is fatally vague and offends due process when a person of ordinary intelligence does not have a reasonable opportunity to know, what is prohibited so that he may act accordingly or if the law does not provide a standard to prevent arbitrary and discriminatory application. Med Express Ambulance Serv., Inc. v. Evangeline Parish Police Jury, 96-0543 (La.11/25/96); 684 So.2d 359; citing *686 Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497-99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). To “sustain a challenge for vagueness, the opponent of the ordinance must prove that the ordinance is so vague ‘not in the sense that it requires a person to conform ... to an imprecise but comprehensible normative standard, but rather in the sense that no standard conduct is specified at all.’” Med Exp., 684 So.2d at 367, citing Village of Hoffman Estates, 455 U.S. at 497, n. 7, 102 S.Ct. at 1191, n. 7. Here, the prohibitions of the pertinent subsections of La.C.E. art. 510 are quite “comprehensible,” if not absolutely clear.
Generally, the statute provides a patient may refuse to disclose and prevent another person from disclosing a confidential communication made for the purpose of diagnosis or treatment of his health condition. See Rullan v. Adobbati, 96-0848 (La.App. 4 Cir. 5/8/96); 674 So.2d 417, writ denied 96-1415 (La.9/13/96); 679 So.2d 387. However, any communication relating “to the health condition of a patient who brings or asserts a personal injury claim ....” is not privileged information. Id. at 418, citing La.C.E. art. 510(B)(2)(a). (emphasis added). The statute clearly provides where La plaintiff is asserting a cause of action related to her (mental or physical) health condition, she may not then prevent disclosure of relevant medical records to a defendant by claiming such information is privileged. That much, we think, is clear. See Rullan, 674 So.2d 417. The more difficult question is whether the legislature intended to allow Gore to, as the trial court put it, “take [the otherwise privileged information] down to the Town Talk and have it published.” The trial court held Gore had no such a right. We agree.[1]
La.C.E. art. 510(E) contains the express reservation that the exceptions to the health care privilege mentioned in subsection B(2)(a) and (c) is waived “only as to testimony at trial or to discovery ... by one of the discovery methods_” Courts are required to “give effect to the unambiguously expressed intent of the legislature if its application does not lead to absurd consequences.” Parker v. Parker, 95-1373 (La.App. 3 Cir. 4/3/96); 671 So.2d 1143; citing Moore v. Gencorp., Inc., 93-0814 (La.3/22/94); 633 So.2d 1268. The trial judge read 510(E) as restricting the use of communications falling within the exceptions mentioned in 510(B)(2)(a) and (c).
Simply framed, the question for us to decide, today, is whether Sanders’ medical records became public record, with unrestricted use, once she complied with Gore’s motion to compel. We find support for the trial court’s decision that Sanders’ medical records should not have been made available to the “Town Talk.”
In Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the United States Supreme Court discussed certain restrictions placed on discovered, but not yet admitted, information. A damages action for alleged defamation and invasions of privacy was brought in a Washington state court by certain members of an eccentric | greligious sect (“the Foundation”). Id. Made defendants were the authors of several disparaging newspaper articles. During discovery, the plaintiffs refused to disclose certain information, including the identity of the Foundation’s donors and members. Appropriately, the court issued an order compelling plaintiffs to release the requested information, but, also issued a protective order prohibiting the defendants from “publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case.” Id., at 20, 104 S.Ct. at 2201. The court based the protective order on several affidavits of Foundation members stating that public release of the information would adversely affect the Foundation and subject its members to harassment and reprisals.
The Washington state supreme court affirmed the protective order, concluding that even if it constituted a restraint of fi*ee expression, the regulation was not unconstitu *687 tional. On appeal to the United States Supreme Court, the petitioners argued “civil discovery is not different from other sources of information_” Id. at 30, 104 S.Ct. at 2206. Although their argument specifically relied on the First Amendment, it is not substantively unlike Gore’s attack on the constitutionality of La.C.E. art.510.[2]
The United States Supreme Court began by likening most states’ discovery provisions to Rules 26 through 37 of the Federal Rules of Civil Procedure. Id. at 28, 104 S.Ct. at 2205. It acknowledged the “[rjules do not differentiate between information that is private or intimate and ... often allow extensive intrusion into [private matters].” Id. at 30, 104 S.Ct. at 2206. As long as the information sought “appears reasonably calculated to lead to the discovery of admissible evidence” it is discoverable. Id. (citations omitted).
After establishing that impediments to free speech are usually limited, Justice Powell further outlined the right to free speech, stating “[i]t does not necessarily bfollow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery.” Id. at 30, 104 S.Ct. at 2206, (emphasis added). Discovery proceedings, the court noted, rarely take place in public. Likewise, certain methods of discovery “are not public components of a civil trial.” [3] Finding the protective order constitutional, the court held:
There is an opportunity ... for litigants to obtain — -incidentally or purposefully— information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.
Id. at 35, 104 S.Ct. at 2209 (citations omitted and emphasis added).
The Rhinehart case, of course, did involve a protective order issued concurrently with the order compelling discovery. In the case before us, on the other hand, no protective order was issued until after the information in question was injudiciously communicated. But, an official order of the court was unnecessary in this case, because the wording of La.C.E. art. 510(E) provides what we think is the legislative equivalent of a protective order. The legislature enacted La.C.E. art. 510(E) to guard against the very scenario presented in this record. By operation of law, the provision restricts the use of communications falling within the exceptions provided by 510(B)(2)(a) and (c). Rhinehart expressly sanctioned as constitutional our legislature’s attempt to prevent unfettered use of such information obtained in preparation for trial.
We note our brethren on the First Circuit Court of Appeal recently touched on the issue in Hortman v. Louisiana Steel Works, 96-1433 (La.App. 1 Cir. 6/20/97); 696 So.2d 625; writ denied 97-1919 (La.11/7/97); 703 So.2d 1268. The plaintiff in Hortman, appealing a workers’ compensation hearing officer’s adverse ruling, argued lipthe hearing officer erred in admitting the deposition of his treating physician because the defense counsel had an improper ex parte communication with the doctor prior to taking his deposition. Id. The appellate court disagreed, noting “the mere filing of a personal injury claim destroys or takes away the ... privilege created in 510 B(l).” Id. Once a plaintiff puts an aspect of his health at issue, the Hortman court found, “no real discussion is necessary on the issue of health care provider-patient privilege.” Id.
We agree, in part, with the Hortman decision. First, Hortman involved a plaintiff who attempted to prevent disclosure of private information to the court and opposing party. We agree that testimonial privileges *688 “are whole concepts and do not exist in piecemeal fashion.” Id. at 628. And, “[p]arties are not entitled to claim a privilege ... on information which is unfavorable to them, while at the same time attempting to waive the privilege in regard to information that is favorable to them.” Id. However, as we have mentioned, the issue before us involves transmission of discovered material to influence or for use in matters unrelated to trial and outside of the courtroom. While Sanders could not have prevented discovery of sensitive records pertaining to her mental health, Appellants’ actions after they obtained the information violated La.C.E. art. 510(E).
We cannot agree with the First Circuit’s interpretation of La.C.E. art. 510. Had the legislature intended La.C.E. art. 510(E) to mean what Hortman found, this section would have little, if any, effect. According to Hortman:
This section seems to indicate that the exception to the privilege, i.e., the release of documents or information covered by the privilege, can only be effectuated through testimony at trial, proper discovery procedure, or in accordance with the procedural rules set up in R.S. 40:1299.96 or in those procedures set up in R.S. 13:3715.1 ... These statutes establish a procedure for the release or transfer of information that had been covered by the privilege, and that is all they do.
Id. at 628.
lnAll the provisions cited by the Hortman court in the above excerpt were already in effect when La.C.E. art. 510 was adopted. We do not suppose the legislature took the effort to redact Subsection (E) merely to encourage continued adherence to existing law. Instead, we think our lawmakers intended to protect against the type of public invasion into personal and private matters “aided and abetted” by Gore and his lawyer through their voluntary transmissions of Sanders’ communications.
The trial court correctly ordered Sanders to produce her medical records to defense counsel; but, the release of those records was intended only to facilitate fact-finding relevant to trial of the disputed issues. The trial judge found Drell’s action in quoting excerpts from Sanders’ medical communication and submitting certain attachments to his brief, filed in the record and available for public viewing, was not motivated by any legitimate purpose and constituted a deliberate attempt to circumvent 510(E). He found Gore’s conduct in dissemminating the information to an assistant attorney general even more egregious, stating such use was “contrary to the law and contrary to proper legal practice.” We cannot say the court-compelled disclosure of her medical records waived Sander’s statutorily recognized privilege other than for “testimony at trial ,or discovery of the privileged communication.” La.C.E. art. 510(E). Appellants’ disclosure of her records for other use, we agree, was improper.
DECREE
For the foregoing reasons, we affirm the judgement below. All costs are cast against Appellants.
AFFIRMED.
WOODARD, J., concurs in the result.

. We note that under C.E. art. 510(C)(1), a patient may refuse to disclose confidential communications about her health care even in subsequent criminal proceedings. Thus, the Attorney General's Office had no legal means of obtaining the information it eventually received from Gore and/or his wife.

. Although the focus of his argument pertains to the statute's comprehensibility, in brief Gore argues, “article 510 unconstitutionally limits the First Amendment freedoms of the Gores ..."

. In fn 19, the court discussed the private nature of discovery process. For example, "[djeposi-tions are scheduled at times and places most convenient to those involved” and without notice or invite to the general public. Id. Also, "[i]nter-rogatories are answered in private” and the trial court may order certain proffers of evidence to be "filed under seal." Id. To that end, the Rhine-hart court opined: to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court.