| JAMES L. CANNELLA, Judge.
This is an appeal by the Plaintiffs, Andrew Messina, Jr. (Messina) and D & G Productions, Inc. (D & G), from a summary judgment denying an outdoor liquor permit by the Defendant, the Parish of St. Charles (the Parish). We affirm.
In April of 1994, D & G, through its President and owner, Messina, leased a building at 20 Avenue of the Oaks, Destre-han, Louisiana for the purpose of operating a wedding reception hall and restaurant. The building is 3,000-4,000 square feet, with a maximum capacity of 75 people and is located within 500 feet of a residential neighborhood. The Plaintiffs operated the business in the name of Messina’s Oak Plantation (Messina’s) for three years. The reception business steadily grew and the bookings increased to multiple events on the weekends and large parties. To accommodate the larger parties, the Plaintiffs erected large tents on the grounds outside the building to accommodate up to 250 people. Liquor was served outdoors and musicians played in an outside tent. In 1996, Huey Long (Long), a neighbor, complained of noise from a diesel operated truck which was hired to provide air-conditioning to the outside tents. The Plaintiffs I,-¡subsequently purchased air-condition units to replace the truck. However, as the events and the number of guests increased, the noise from the outside music increased. Long and other residents of the area nearby complained. Messina usually stopped the music if it was after 10:00 p.m. Eventually, the residents located near the facility signed a petition for the Parish to take some action to curtail the noise from the music.
The issue was considered by the Parish council on August 5, 1997 in a public hearing. A recommendation was made to amend the Code of Ordinances, Section 3-6, which regulates the permitting process for the sale and consumption of alcoholic beverages outdoors. At the time, the ordinance exempted restaurants from its provisions. The amendment would remove the exemption and provide for a procedure to appeal to the council if a permit application was denied. Several residents near the Plaintiffs’ business spoke in favor of the ordinance, contending that the noise and vibrations emanating from the bands playing for the outside wedding receptions was so bad that it seriously impeded conversations and shook the houses. During the discussion, it was noted that alcohol consumption causes raised voices, causing the music in turn to be played louder. Thus, regulation of the sales and consumption of alcoholic beverages would be a way to control the noise. The Parish council members acknowledged that a specific noise ordinance was more difficult to draft because of freedom of speech and law enforcement concerns.
Following the meeting, the Parish council passed an amended ordinance which required the Plaintiffs to apply to the Director of Planning and Zoning for a non-fee, one-time permit.[1] The Plaintiffs continued to operate the business for [4four months without applying for it, although they were warned to comply. The Plaintiffs finally submitted the application in December of 1997, after the Sheriff shut down the business for providing alcoholic beverages outdoors without a permit. The permit was denied by the Director of Planning and Zoning and was then forwarded to the Parish council for consideration. A *161 hearing was held on January 5, 1998, during which five residents affected by the permit spoke against granting the permit and one person spoke in favor. Two of the residents contended that the loudness of the music was directly related to the consumption of alcoholic beverages because the more people drink, the louder they speak and the louder the music is played to compensate. Messina also spoke at the council meeting, arguing that he purchased the property in 1994 for the purpose of operating a wedding reception business. Since the land outside of the restaurant is visually appealing and the building was too small to hold large receptions inside, he set about making the outside suitable for large receptions. Messina said that he purchased large tents, built a deck, and put lights in the trees. He noted that he cannot operate profitably using just the inside of the building because of its small size. He disagreed that the alcohol ordinance would solve the noise problem and was upset that the ordinance was passed without first holding a meeting with the neighbors. Messina argued that the council could not use an alcohol ordinance to deny his permit because of noise when the object of the ordinance is to regulate alcohol, and there was no showing that the two were related. The Parish council tabled the matter to permit Messina and the neighbors to have a town meeting to attempt to resolve the problem. According to the petition, the meeting was not held and on February 2, 1998, the Parish council denied the permit.
| sOn appeal, the Plaintiffs contend that the trial judge erred in granting the summary judgment because there are material issues of fact in dispute and because the Defendant is not entitled to a judgment as a matter of law. The Plaintiffs further assert that they were denied their constitutional rights of due process of law and equal protection and were deprived of property without just compensation
PROCEDURAL DUE PROCESS OF LAW
The Fifth and Fourteenth Amendments of the U.S. Constitution and La. Constart. 1, § 2 provide that no person shall be deprived of life, liberty or property without due process of law. “Procedural due process imposes constraints on governmental decisions which deprive individuals of property interests within the meaning of the Fourteenth Amendment.” Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Martin v. Rush’s Fabricare Center, Inc., 590 So.2d 707, 709 (La.App. 3rd Cir.1991). Thus, in any due. process claim involving the loss of property, the claimant must show the existence of a property interest that has been adversely affected by state action. Martin, 590 So.2d at 709. Further, affected persons have the right to be heard and in order that they may enjoy that right, they must first be notified. Jackson Court Condominiums, Inc. v. New Orleans, 874 F.2d 1070 (5th Cir.1989); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). However, when a governmental action is characterized as legislative, procedural due process requirements do not apply. Jackson, 874 F.2d at 1074. Zoning decisions by city councils are characterized as legislative or quasi-legislative, thereby negating procedural due process claims. Id.; South Gwinnett v. Pruitt, 491 F.2d 5, 7 (5th Cir.) (en banc), cert. denied, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).
|fiIn this case, the Plaintiffs argue that they were denied procedural due process because the ordinance was amended without notice to them. However, the Plaintiffs have no claim for procedural due process since the Parish council is a quasi-legislative body. Even so, the ordinance *162 was discussed in a public hearing in which any interested party could participate, Messina knew about the ordinance after it was passed, yet waited four months to apply for the permit, and he participated in the discussion at the council meeting held in January of 1998 to determine whether he would receive a permit.
SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION
The Plaintiffs argue that the Parish council’s act of passing the ordinance and subsequently denying a permit to Messi-na’s affected a vested right and forced the closure of the business. He explains that the building only holds 75 people and it would have been unprofitable to operate a wedding reception/party business in such a small area. He further stated that no one would book the facility without outdoor access to alcoholic beverages. The Plaintiffs also contend that the Parish council passed the ordinance solely to affect Messina’s and there was no showing that any other restaurant would be affected, and that it was passed as a unconstitutional pretext to regulate noise.
Substantive due process rights are balanced against the police power of a governing authority to protect the health, safety, morals and general welfare of the people. State v. Edwards, 00-1246, 14, (La.6/1/01), 787 So.2d 981, 992. Governments have an inherent need “to protect the safety and welfare of their citizens from the unrestrained liberty of some individuals.” Nowak, Constitutional Law 389 (1978), citing Corwin, Liberty Against Government 72 (1948); Edwards, 00-1246 at 15, 787 So.2d at 992.
In Med. Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury, 96-0543, p. 7-8 (La.11/25/96), 684 So.2d 359, 365, the Court analyzed the equal protection and due process provisions of the federal and state constitutions in the context of a local ordinance. The Court stated:
Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in areas of social and economic policy, a statutory classification which does not proceed along suspect (FN10) or semi-suspect lines, (FN11) nor infringe on fundamental rights, (FN12) need only be rationally related to a legitimate governmental interest. City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Similarly, the crux of the Due Process Clause of the Fourteenth Amendment, is protection from arbitrary and unreasonable action and when the ordinance or statute does not affect fundamental rights, but rather is merely economic or social regulation, it need only have a rational relationship to a legitimate governmental interest. Id.[2]
The Court distinguished between the federal constitution and the rights guaranteed under the Louisiana State constitution, stating that “The rights guaranteed under our state constitution are not always synonymous with federal constitutional rights,” citing Crier v. Whitecloud, 496 So.2d 305 (La.1986) and Sibley v. Bd. of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985). In Sibley, the Louisiana Supreme Court rejected the *163 three-tiered federal system standard of equal protection review for interpreting and applying the equal protection clause of our state constitution found in Article I, § 3.[3] The Court shifted the focus from determining under which category a particular case falls (strict, intermediate, or minimum scrutiny), which then all but decided the case, to that of conducting an independent review of the specific merits of the individual |scase which necessarily entails a balancing or comparative evaluation of governmental and individual interests. Sibley, 477 So.2d at 1107; PANO v. City of New Orleans, 94-1078, p. 16 (La.1/17/95), 649 So.2d 951, 963. The Court stated that La. Const. Art. I, § 3,
“commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.
Sibley, 477 So.2d at 1107-08.
“Under the third level of scrutiny, the law creating the classification is presumed constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional.”[4] Med. Exp. Ambulance Service, Inc., 96-0543 at 10, 684 So.2d at 367.
In this case, the ordinance is not based on any classification enumerated in Article I, § 3, nor does it involve a suspect or semi-suspect class. Thus, the ordinance must be upheld unless the Plaintiff can show that it does not further an appropriate governmental interest under the state constitution, or that is not rationally related to a legitimate governmental interest, as required by the federal constitution. The Plaintiffs have produced no evidence to meet this burden, so the ordinance is presumed constitutional. The health, safety, and welfare of citizens are appropriate government interests, and alcohol regulations are directly related to the health, safety and welfare of the citizens.
The Parish council has the authority under law to enact ordinances to curtail noise or the unruly behavior associated with alcohol consumption in a specific 19location. See: West Central Louisiana Entertainment, Inc. v. City of Leesville, 594 So.2d 973 (La.App. 3rd Cir.1992); Callaghan v. Congemi, 1995 WL 354844 (E.D.La.1995). Municipal or parochial regulation of intoxicating beverages may be more stringent or restrictive than state law regulations if “appropriate to the necessities of the locality and that it is not in itself unreasonable.” City of Lafayette v. Elias, 232 La. 700, 95 So.2d 281, 284 (1957). Vonderhaar v. Parish of St. Tammany, 633 So.2d 217, 221 (La.App. 1st Cir.1993). If a rational basis can be found for the ordinance, the motive behind its passage is not subject to review as to *164 whether the purpose of the statute can actually be fulfilled. FCC v. Beach Communications, Inc., 508 U.S. 307, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993), on remand, 10 F.3d 811 (D.C.Cir. 1993).
In this case, the Plaintiff has no fundamental right to serve alcoholic beverages. Although the denial of the permit affects the scope of his business, the ordinance does not affect his right to conduct either a restaurant business or a reception business. His right to provide alcoholic beverages inside was not revoked by the ordinance. The ordinance is merely economic or social regulation. Thus, it need only have a rational relationship to a legitimate governmental interest. Here, the restriction on alcohol outdoors has a rational relationship to a legitimate governmental interest, which is to regulate noise nuisance. Based on comments made in the Parish council meetings, the Parish council concluded that removing the exemption for restaurants was the best way to regulate the noise caused by loud music at outside parties. We find that this is not an unreasonable approach to the problem. Since the ordinance does not affect a fundamental right, does not constitute arbitrary and unreasonable action, and is rationally related to a legitimate government interest, it does not violate the federal or the state’s due Improcess protections.[5] For the same reasons, we find that the denial of the permit was not an unlawful taking without just compensation.
SUMMARY JUDGMENT
A summary judgment is reviewed by the appellate courts de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750; Garrison v. Tanenbaum, 02-1181, p. 4 (La.App. 5th Cir.4/8/03), 846 So.2d 40, 42. The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La.C.C.P. art. 966(A)(2); Garrison, 02-1181 at 4, 846 So.2d at 42.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the trial court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the trial court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Garrison, 02-1181 at 5, 846 So.2d at 43. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.; La. C.C. P. art. 966(C)(2). After the motion for summary judgment has been properly supported by the moving party, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. Garrison, 02-1181 at 5, 846 So.2d at 43.
We find that the summary judgment was properly granted by the trial judge. We have determined that the trial judge did not err in finding that the Defendant [ndid not violate any constitutional rights of the Plaintiffs. Thus, there are no material issues of disputed fact left to be re *165 solved that would affect the outcome of the case and the Parish is entitled to a judgment as a matter of law.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of the appeal are to be paid by the Plaintiffs.
AFFIRMED.

. After the application is received, the Director posts the notice of the application for 5 days. If no negative commentary is received, the permit may be granted. If there is negative commentary, or the Director denies the application without negative comment, the application is forwarded to the Parish council for consideration.

. "Laws drawing lines along suspect classifications are subject to strict scrutiny and must be necessary to achieve a compelling state interest." Med Exp. Ambulance Service, Inc., 684 So.2d 365 at FN 10. "Laws drawing lines along semi-suspect classifications are subject to intermediate scrutiny and must substantially further an important state interest.” Id. at FN 11. "Like laws drawn along suspect lines, laws impinging on fundamental rights are subject to strict scrutiny.” Id. at FN 12.

. Article I, § 3 provides in pertinent part:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition or political ideas or affiliations....

. Manuel v. Louisiana, 95-2189, p. 5 (La.7/2/96), 677 So.2d 116, 120.

. We note that the property in question was initially built as a law office and later opened as a bar and restaurant. The houses surrounding the building were in existence before the building was built. The Plaintiffs furthermore did not have a vested right to an outdoor alcohol permit.