611 So.2d 180 (1992)
BOURBON COUNTRY ESTATES, INC., et al.
v.
ST. JAMES PARISH, St. James Parish President & St. James Parish Council.
Nos. 92-CA-582, 92-CA-583.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1992.
Writ Denied March 12, 1993.
*181 Malcolm J. Peytavin, Lutcher, Richard J. Guidry, New Orleans, for plaintiff-appellant.
Thomas J. Kliebert, Jr., Convent, for defendant-appellee.
Before GRISBAUM, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
This is an appeal by St. James Parish, its President and Council, from a writ of mandamus directing the parish and its officers to vacate a portion of an established subdivision in accordance with a proposal submitted by the property owner. For the following reasons we vacate the writ of mandamus and render judgment in favor of the Parish and its officials.
The basic facts are these. In the 1980's, Bourbon Country Estates, Inc., (BCE), a land developer and plaintiff here, established with parish approval the Bourbon Campsites Subdivision (see attached map). The lot dimensions, servitudes and street dedications shown on the plats approved by the parish were all in conformity with the requirements for residential subdivisions as set forth in the applicable subdivision regulations. During the next several years many of the 29 designated lots were sold for residential purposes, and homes were constructed by the buyers.
Sometime in mid-1990, the developer sought parish approval for what it termed a "re-subdivision" of three still unsold lots, bearing numbers 27, 28 and 29. Reference to the attached map shows that the subdivision is "L" shaped (with the upright leg pointing north) and that the three lots at issue form the lower or horizontal extension of the "L". It also shows a dedicated street, identified as the Longview Drive Extension, running between lots 28 and 29. The developer's proposed plan was to eliminate the dedicated street and the boundary lines of the three lots, making one parcel of about five acres. To this parcel an additional three plus acres of adjoining unsubdivided land would be added, thus creating a single tract of about eight and one-half acres.
The Parish Planning Commission reviewed the proposal and, after concluding that it met all of the technical engineering criteria, recommended to the Parish President and Council that it be approved. A public hearing was held on November 7, 1990, and after consideration of the views of the proponents and opponents, the Council voted unanimously to deny the proposal. This law suit followed.
The basic contention made by BCE in the trial court, and again here, is that the decision by the Parish Council to deny its proposal was an arbitrary and capricious exercise of police power. In support of this assertion, it urges the following factual and legal argument. All parties here admit *182 that St. James Parish has no zoning or land use regulations in its unincorporated areas. It is further acknowledged that the parish has in effect comprehensive Subdivision Regulations (Sub.Regs.) which were enacted pursuant to La.R.S. 33:101 et seq. These regulations contain, of course, numerous requirements relating to lot sizes, street layout, drainage and utility servitudes, required elevations, and myriad other technical specifications.
The testimony in this matter indicates that Transco, a natural gas transmission company, operates a facility on property located to the south-west of and adjoining Bourbon Campsites. Other references in the record indicate that beneath the subdivision is an oil or gas well which is used by Transco as a storage facility for natural gas, and that on occasion the subdivision has had to be evacuated because of gas leaks. It further appears that certain subdivision residents, BCE, and Transco are involved in another law suit, no details of which appear in the present record. However, it seems that because of that litigation BCE has proposed the development plan at issue here, intending to sell the eight and one-half acre tract to Transco upon its approval by the parish.
As noted above, BCE submitted the proposed plan to the Parish Planning Commission, and that body concluded that the plan met all of the technical criteria of the subdivision regulations. Three witnesses who had worked for the commission when this plan was reviewed testified that in making their assessment they did not consider any proposed use for the property. Further, they all stated that their understanding of the regulations was that the proposed use of a subdivision was irrelevant to whether or not they would approve a plan.
At the public hearing before the Parish Council, a number of residents expressed fears that Transco intended to build other gas facilities on the proposed tract, thus creating another potential hazard. In response to these concerns, the spokesman for BCE stated that representatives of Transco had informed him that the company had no existing plans for use of the tract. At trial of the matter, a representative of Transco similarly testified that there were no such plans. He also stated, however, that were use of the property restricted to residential purposes, Transco would have no interest in acquiring it.
In his reasons for judgment the trial judge accepted as legally correct the assertion by members of the planning commission that the anticipated use for a subdivision was irrelevant to the process of approval. He further noted that the Council's denial of approval was based primarily on speculation that the tract would be used for industrial purposes, and thus possibly constitute a hazard to the health and safety of nearby residents. He concluded that the Council was thus acting arbitrarily and capriciously in rejecting a proposal otherwise in compliance with all regulations for no reason other than mere speculation as to what might be built on the property. He therefore ordered the parish and its officials to approve plaintiff's proposal. The Parish now appeals.
We note at the outset that land use is subject to the police power of various governing bodies, and the courts will not interfere with the decisions of those bodies unless it is plain that their action is without any relation to the public health, safety or general welfare, Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1975).
Stated differently, the question is whether a decision by the governing authority bears so little relation to public health, safety or welfare as to render it arbitrary and capricious, Palermo Land Co. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990). Further, the burden of proof is on the plaintiff to establish that the authority has acted arbitrarily, and if upon consideration of the evidence the propriety of the authority's action remains debatable, then that action will be upheld by the courts, Palermo Land Co., supra. Finally, the same analysis is applicable whether the issue involves zoning or subdivision regulation, Christopher Estates v. Parish of East Baton *183 Rouge, 413 So.2d 1336 (La.App. 1st Cir. 1982).
Turning to the present matter, St. James Parish has enacted subdivision regulations pursuant to State enabling legislation designed to promote orderly parish development, La.R.S. 33:101 et seq. Reference to these local regulations shows that they distinguish between, and provide different standards for, single family residential subdivisions and nonresidential subdivisions, which latter include those intended for multifamily, commercial or industrial purposes, Sub.Regs., sec. 26:163(A). In addition, Sub. Regs., sec. 26:117, Table 1, provides pertinently that in residential subdivisions the minimum right of way for local streets is 50 feet, while in nonresidential subdivisions it is 60 feet. Additionally, nonresidential subdivision regulations require that additional standards be met, depending on the particular land uses anticipated, such as the suitability of the size of the parcel for the anticipated development, street rights of way and paving suitable to anticipated type of traffic, impact of potential uses on neighboring residential developments and avoidance of truck traffic through residential areas, Sub.Regs. sec. 163(B)(1-6).
Reference to the attached map shows that Bourbon Campsites was originally subdivided as a residential development, and the record shows that this is indeed the use which has been made of it. It must also be noted that all of the streets, including the Longview Drive Extension, have only a 50 foot right of way as required in residential subdivisions. The evidence is conclusive, therefore, that Bourbon Campsites was subdivided as a residential development, and this fact is not contested by BCE, its developer.
Concerning BCE's proposal as to lots 27-29, the developer describes its plan simply as a re-subdivision. However, the facts of record show that it is more properly first a partial vacation of an existing residential plat, and then, a proposal to create a new adjoining subdivision. The legal implications of the above characterization are these. Section 26:21(A) of the regulations provides that "any plat or any part of any plat" may be vacated at any time "before the sale of any lot therein", simply by a written declaration to that effect. However, once lots have been sold, all of the owners of lots in the plat must join in executing the written declaration. Because none of the other lot owners joined in BCE's proposal to remove the three lots and dedicated street from the subdivision plat, the council acted properly in disapproving the plan.
However, we do not base our decision here solely on the narrow grounds stated above. Our second, and more comprehensive reason, concerns the erroneous notions that the proposed use of a plan of subdivision is an irrelevant consideration by the Parish Council, and that approval must automatically be granted when all technical criteria of the regulations have been met. As indicated above, these regulations have numerous requirements which can only be analyzed and applied on the basis of a known proposed land use. Indeed, most of the criteria of Sub.Regs., sec. 163(B)(1-6), such as the parcel size, street right of way and paving requirements, impact on neighbors, and possible truck traffic through residential neighborhoods, are meaningless outside the context of a specific proposed use. Thus, without any specification by a landowner of such a proposed use in his plan, the Council is effectively deprived of critical information upon which to assess the plan.
That is precisely the situation in the present case. BCE has proposed to remove a portion of land from a previously established residential subdivision plat, and include that land in a newly proposed subdivision for which, according to the developer, no proposed use is contemplated. In this circumstance, it is impossible for the Council to evaluate the proposal under the applicable regulations, and its decision to deny the proposal cannot therefore be deemed an arbitrary and capricious exercise of the police power.
We further point out that a challenge to land use regulation "is a de novo proceeding in which the issue is whether *184 the result of the legislation is arbitrary and capricious, and therefore a taking without due process of law", (emphasis in original) Palermo Land Co. v. Planning Commission of Calcasieu Parish, supra. In the present case there has been no showing that any taking has occurred, much less that it was arbitrary. Even viewing the evidence in a light most favorable to the developer, all that has been shown is that there is one potential buyer for the property were it not restricted to residential use. There is absolutely no evidence to show that the present subdivision of the property, which the developer itself originally sought from the parish, has had or will have any negative impact whatsoever on the value or merchantability of the lots at issue. Neither is there any evidence to show that the plan proposal by the developer would in any way contribute to the land's best or most economical use. On this showing we can only conclude that no taking has occurred and therefore that the developer is not entitled to the relief sought.
The final issue of concern to this court is the attempted use of a mandamus proceeding in part to compel the Parish to vacate a street dedication. Upon dedication, title to streets vests in the public body. Boagni v. State through DOTD, 399 So.2d 813 (La.App. 3rd Cir.1981). While there may exist conceivable situations in which retention or abuse of such title might lead to a judicially imposed award for injury or loss to private parties, we know of no law which would permit a court to order that a governing body divest the public of title to such property. For this reason as well, we conclude that the writ of mandamus was improperly issued.
For the foregoing reasons, the writ of mandamus is vacated and judgment is rendered in favor of the defendants.
WRIT OF MANDAMUS VACATED, JUDGMENT RENDERED IN FAVOR OF DEFENDANTS.
*185