SUSAN M. CHEHARDY Judge.
|2The plaintiffs appeal the dismissal of their challenge to the denial of their application for approval of a proposed RV park. We affirm, for the reasons that follow.
On April 20, 2010, Louis Lipps on behalf of Light House RV Park, LLC (“Light House”), and Sharon Blanchard filed suit against the St. John the Baptist Parish Council (“Council”) and the Parish of St. John the Baptist (“Parish”). They alleged that on June 2, 2009, Lipps, on behalf of Light House, had applied for approval to subdivide Lot C-2, Peavine Road, LaPlace, Louisiana, owned by Blanchard, for development into a recreational vehicle (RV) park. The parish Planning and Zoning Commission (“Commission”) had approved the application. The Council, however, denied permission.
The plaintiffs alleged they had met all the conditions and requirements of the various parish departments, including planning and zoning, health, public works, engineering, coastal wetland use review, site plan review, fire department, and homeland security, yet the Council denied their application. They asserted that the denial was based solely on “political pres *450 sure brought to bear since the plaintiffs [smet all conditions for the construction of the project as requested by the parish departments.”[1]
The plaintiffs alleged that the defendants’ denial of their application was arbitrary, capricious, and unreasonable, an abuse of authority, an abuse of discretion, and that it deprived the plaintiffs of the use of their land for the best and most productive use. They sought a writ of mandamus directing the defendants to approve the plaintiffs’ application, as well as monetary damages for loss of profits and inconvenience.
The matter was tried over the course of two days, on May 11 and 23, 2011. On June 28, 2011, the district court issued a Judgment with Reasons, in which it denied the petition with prejudice, and upheld the Council’s denial of the application for subdivision approval. The court found merit to the plaintiffs’ claims that they were treated differently from other applicants in the approval process, but the court further found that the plaintiffs failed to meet their burden of proving that the Council acted arbitrarily and capriciously. The court ruled that the Council’s action was based on legitimate public concerns and was, therefore, reasonable.
Plaintiffs have appealed.

FACTS

We adopt the following pertinent parts of the district court’s Judgment With Reasons:
Frenier is [a] very small waterfront community on Lake Pontchartrain, consisting mostly of camps and a few businesses[,] and is accessed by Peavine Road, off of Highway 51. This area is identified by FEMA as a “Coastal High Hazard Area V-Zone” (areas along coasts subject to inundation by the one-percent-annual chance flood event with additional hazards associated with storm induced waves). Plaintiffs (one is owner, the other ¡^developer) have proposed to develop an RV Park on one of Ms. Blanchard’s lots in Frenier for the primary purpose of short-term residency (vacationers) and housing workers for the local plants, leases legally restricted to a maximum term of six months.
The issue presented is whether the St. John the Baptist Parish through its Council (hereinafter referred to as Parish or Council) acted arbitrarily and capriciously in denying plaintiffs’ application for approval of an RV Park at Frenier. In support of this claim plaintiffs assert and present evidence that they were treated differently from other applicants.
[[Image here]]
Without going into all the details of each and every meeting between plaintiffs and the Planning and Zoning Board (hereinafter referred to as Board) or members thereof, and without mentioning every requirement demanded of and met by plaintiffs, the evidence presented was as follows:
In June 2009 plaintiffs met with either the Planning and Zoning Board or individual members thereof regarding ordinances and other requirements pertinent to the proposed development. Between June and February 2010 plaintiffs met all application requirements (which were numerous, expensive and time-consuming and some unnecessary *451 as well), and their application was approved by the Planning and Zoning Board. However, Mr. Henderson, Director of the Planning and Zoning Board, did not agree with the majority of the Board and had the matter placed on the agenda of a parish council meeting. Approval ultimately was denied by the Council. Defendants defend the Council’s decision by citing its discretionary authority and specific legitimate concerns.
In support of their claim that the Parish acted arbitrarily and capriciously in rejecting their proposal, the plaintiffs presented evidence that they were treated differently from previously approved applicants. This evidence showed, through parish records of variances granted, as well as photographs, that other trailer and RV parks were not held to the same standards demanded of the plaintiffs. Other developments were exempted or granted variances while plaintiffs had to meet not only every requirement but were required to go beyond the usual requirements. Further, none of the other comparable developments were made to go before the Council for approval. Plaintiff Mr. Lipps also testified to specific incidents in which Mr. Henderson exhibited | ¡¡animosity toward him during the process, but Mr. Henderson denied any animosity toward Mr. Lipps or his project.
There were two types of opposition to plaintiffs’ development that were expressed during the council meeting at which the proposed RV Park appeared on the agenda.
A. Public opposition: Despite public notice of the hearing, no one, particularly plaintiffs’ neighbors from the Frenier community, appeared in support of plaintiffs’ development. However, there were several appearances by those who opposed the RV Park for various reasons: anticipated detrimental effect on property values, road problems, limited parking, congestion and interference with potential plans for the area (similar to New Orleans’ West End). There was also written opposition via email from the owner of the neighboring restaurant Frenier Landing.
B. Opposition by Director of Planning and Zoning: Although Mr. Henderson was Director of Planning and Zoning, he opposed the approval by that Board of plaintiffs’ development. Mr. Henderson testified that some of his concerns were: Louisiana Floodplain Desk Reference (FEMA and DOTD) does not recognize RVs; current Parish objective of closely monitoring codes; burden on infrastructure and utilities; one-way access; Parish participation in the National Flood Insurance Program (NFIP) flood costs rating system which has resulted in significant savings; and the Parish Flood Plan criteria which particularly includes danger to life and property, susceptibility of flood damage, dangerous materials, compatibility of use, safety access for emergency vehicles, cost of service and public utilities.
Plaintiffs assert that council approval was not necessary because their application had been approved by Planning and Zoning and all technicalities had been met. However, defendants rebut this assertion by citing Parish ordinances which provide that Planning and Zoning approval is merely an authorization to submit the preliminary or conditional plat to the Council for further action .... In further support of its position the Parish cites jurisprudence which holds that the Parish is not bound to grant approval of a submission despite technical criteria having been met.... Hence, the Council is not bound by Plan *452 ning and Zoning’s recommendation or approval.
[[Image here]]
| fiThe evidence bears out plaintiffs’ claim that they were treated differently from other applicants in the approval process. Nevertheless, different treatment does not necessarily equate with “arbitrary and capricious” actions. Notably, the evidence showed that plaintiffs own two other businesses in Frenier that were previously approved, receiving different treatment from the instant case. Also, between the approval of other trailer/RV parks and the instant one, there was a change of administration with a different focus on code adherence and “Coastal High Hazard Area V-Zone” development, which would account for some different treatment.
[[Image here]]
Plaintiffs have the burden of proving that the Council acted arbitrarily and capriciously, and they have failed to meet that burden of proof. The court finds that the Council’s action was based on legitimate public concerns and therefore reasonable. Hence, the Parish did not act arbitrarily and capriciously in denying approval of plaintiffs’ application.

ARGUMENTS

On appeal the plaintiffs argue that the trial court abused its discretion and was manifestly erroneous in failing to strictly construe parish ordinances in favor of the property owner; in finding that, although the proposed use of the property for an RV park is a permitted use in rural districts, it requires council approval; and in failing to find that plaintiffs should have been free to use their land unencumbered by the Parish when there was no ordinance to the contrary. Further, they contend the trial court abused its discretion and was manifestly erroneous in not applying the caselaw which requires St. John the Baptist Parish to treat businesses in a uniform manner, although the trial court specifically found that the plaintiffs were treated in a non-uniform manner. The plaintiffs assert the trial court erred in finding that, although there are no specific standards for granting or denying applications for conforming use, the denial was not unconstitutional. Finally, they contend the trial court was manifestly erroneous in not finding that |7the Council had acted arbitrarily and capriciously in denying the plaintiffs’ right to use their land for their intended purpose.
In opposition, the defendants assert that the Council’s decision is entitled to deference and should be upheld unless the decision is “palpably erroneous and without any substantial relation to the public health, safety, or general welfare.” They argue the Council is not restricted to technical considerations in making its decision and, therefore, the trial court correctly found the Council’s decision was rooted in appropriate and well-founded concerns for the public and should be upheld. They contend the “use by right” standard is inapplicable and, further, that the plaintiffs do not have a “use by right.” Finally, they point out that the plaintiffs’ arguments regarding constitutionality are not properly before this Court; alternatively, that the ordinance in question is constitutional.

LAW AND ANALYSIS

The district court did not address the constitutionality of the zoning ordinance. We find no error on that point. The plaintiffs not only failed to raise constitutionality in their petition, but also they failed to serve the state attorney general with a copy of the petition. Therefore, constitutionality was not properly before the court. See La. C.C.P. art. 1880.
*453 “A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice.... ” La. C.C.P. art. 3862. “A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law....” La. C.C.P. art. 3863.
Mandamus is not an appropriate procedure where there is an element of discretion left to the public officer. Schmill v. St. Charles Parish, 96-894, p. 11 (La.App. 5 Cir. 3/12/97), 692 So.2d 1161, 1166, citing Starlight Homes, Inc. v. Jefferson Parish Council, 93-746 (La.App. 5 Cir. 2/9/94), 632 So.2d 3; writ denied, 637 So.2d 462 (La.1994).
Land use is subject to the police power of various governing bodies, and the courts will not interfere with the decisions of these bodies unless it is clear that their action is without any relation to the public health, safety, or general welfare. In reviewing a land use decision, the issue is whether the governing body’s decision is arbitrary and capricious. The plaintiff bears the burden of proof to establish that the governing authority has acted arbitrarily. To determine if the governing authority’s decision regarding a resubdivision request is valid, the trial court must ask whether the decision bears so little relationship to public safety, health, or general welfare as to render it arbitrary and capricious. [Citations omitted.]
Willow, Inc. v. Jefferson Parish Council, 05-754, p. 7 (La.App. 5 Cir. 4/25/06), 928 So.2d 756, 759-760, writ denied, 2006-1596 (La.9/29/06), 937 So.2d 869.
“In considering the question of whether an ordinance is valid, the court must ask whether the decision bears so little relationship to public safety, health, comfort or general welfare as to render it arbitrary and capricious. The legal analysis is the same whether the issue involves resubdivision or rezoning or both.” Cerruti v. Parish of Jefferson, 94-608, p. 6 (La.App. 5 Cir. 1/18/95), 650 So.2d 315, 317; Bourbon Country Estates, Inc. v. St. James Parish, 611 So.2d 180, 182 (La.App. 5 Cir.1992), writ denied, 613 So.2d 997 (La.1993).
We find that mandamus is not the appropriate procedure here, because the actions involved are not purely ministerial duties, but rather they require the exercise of discretion.
Pursuant to the St. John the Baptist Parish Code of Ordinances, the area in question is designated as a Rural District:
The Rural District is established as a multiuse district and for the unconditional placement of certain allowable residential, recreational and public uses. Commercial and [ ^industrial uses are allowed to locate only in those areas that are compatible to the specific use based upon specific locational criteria and performance standards and located in such an area as to conserve the value of land and structures....
Code of Ordinances of St. John the Baptist Parish, Louisiana, Sec. 113-164.
Among the permitted uses in the Rural District are recreational camps and campsites. Code of Ordinances of St. John the Baptist Parish, Louisiana, Sec. 113-165(4). However, the plaintiffs have failed to consider the additional burdens placed on the Planning and Zoning Department to comply with requirements of the federal National Flood Insurance Program.
Michael K. Henderson appeared at trial as the representative of the defendants. He testified he is the Director of Planning and Zoning for the Parish, which includes *454 the title of Flood Plan [Plain] Administrator.[2]
He is responsible for oversight, permitting, building code regulations, subdivision requirements, and floodplain administration for the parish. Pursuant to Sec. 113— 26, it is his duty as zoning regulatory administrator to enforce the zoning provisions. As floodplain administrator, it is his responsibility to review applications for development in flood-prone areas pursuant to Sec. 107 — 33(b) of the Code of Ordinances,[3] and to ensure compliance with the National Flood h nInsurance Program requirements. Hence, when reviewing applications submitted to the Planning and Zoning Department, he must not only check for compliance with the parish zoning ordinances, but also for compliance with the national flood insurance requirements.
Henderson stated the Frenier area in which the RV park would be located is in a Coastal High Hazard area, also called a V zone, an area identified by the Federal Emergency Management Agency (FEMA) that requires special vigilance in the development. He relies on a manual known as the Louisiana Floodplain Management Desk Reference, prepared for FEMA and the Louisiana Department of Transportation and Development, which sets out parameters for communities’ compliance with the National Flood Insurance Program (NFIP) requirements.
Henderson noted that the criteria for RVs states they can be located in coastal floodplains if they meet certain standards, but “it is recommended that they be prohibited altogether from coastal high hazard areas.” The NFIP Desk Reference also states, “Communities should designate locations outside of V Zones that are acceptable for ... RVs. Since RVs are more mobile, it will probably be necessary to post notices in V Zone areas where RVs are not permitted.”
Henderson said his recommendation against the RV park was due partly to its being in a V zone. He stated that development in a V zone can affect the parish’s community rating system (CRS) for flood insurance purposes. He said that FEMA uses the CRS to identify what parishes pay for flood insurance. Henderson testified he stated at a Council meeting that *455 the RV park project conflicts with the CRS statement and standards.
Under Sec. 113-99 of the Code of Ordinances, the application process for a use permit from the zoning regulatory administrator requires review of the application by the zoning regulatory administrator, who submits his findings to the ^planning commission at a public hearing, with advertisement of the proposed use in the parish’s official journal prior to the hearing. Parties in interest and the general public have an opportunity to be heard at the hearing. The zoning regulatory administrator submits a report and recommendations to the planning commission. The planning commission reviews and acts on the application. Thereafter a report of the planning commission’s recommendation and the zoning regulatory administrator’s recommendation is submitted to the parish council. The parish council then votes on the proposal.
Henderson stated that only one of the RV parks in St. John the Baptist Parish is located in a V Zone — Red Moon Campground, which is in Frenier near the proposed site for Light House RV Park. Henderson pointed out that he was not the Planning and Zoning Director when Red Moon was approved. He became director in 2008. He considers it important to adhere as closely as possible to requirements of the code of ordinances.
Henderson said that since he became director of planning and zoning in 2008, the parish’s flood insurance rating has gone from the worst rating — a nine — down to an eight, which has resulted in savings of millions of dollars to the community.
Henderson pointed out that the only building he had approved in the Frenier area since he came on was a pre-existing old restaurant that had been renovated. He made sure it was inspected and that the renovations followed NFIP rules. It was an existing facility just reopening under a different name. He admitted the developers of that business had not been required to go before the Council.
In addition, Henderson pointed out he had submitted to the Council copies of letters and e-mail messages of objections to the proposed RV park that had been received prior to the council meeting. In addition, some people came in person to 112speak at the council meeting against approval of the plaintiffs’ application. Henderson said some of the speakers’ concerns were related to property values, others to the inferior roads, crowding of parking spaces, etc.
In contrast, at the council meeting the plaintiffs did not present either letters from other people approving their proposed RV park, nor did anyone except the plaintiffs and their attorney appear to speak in favor of it.
Considering the foregoing, we find no abuse of discretion in the district court’s determination that the Council’s action in refusing to grant the plaintiffs’ resubdivision application was not arbitrary and capricious.

DECREE

For the foregoing reasons, the judgment is affirmed.

AFFIRMED

. In addition, the petition stated, "Plaintiff, Louis Lipps, who spearheaded the project, is American Indian, and feels that his race has played a huge part in his being discriminated against by the defendants.” The district court dismissed that claim by summary judgment. That ruling is not part of this appeal.

. The proper title is ñooáplain administrator (emphasis added). The Code of Ordinances of St. John the Baptist Parish, Louisiana, Sec. 107-32(a), states, "The department of planning and zoning is hereby appointed the floodplain administrator to administer and implement the provisions of this chapter and other appropriate sections of 44 CFR (National Flood Insurance Program regulations) pertaining to floodplain management.” (Emphasis added.)

. Under Sec. 107-33(b), the duties and responsibilities of the floodplain administrator shall include, in pertinent part, the following:
[[Image here]]
(2)Review permit applications to determine whether proposed building sites, including the placement of manufactured homes, will be reasonably safe from flooding.
(3) Review and approve or deny all applications for development permits required by the adoption of this chapter.
(4) Review permits for proposed development to ensure that all necessary permits have been obtained from those federal, state or local governmental agencies, including section 404 of the Federal Water Pollution Control Act Amendments of 1972, 33 USC 1334, from which prior approval is required.
[[Image here]]
(8) When base flood elevation data has not been provided in accordance with section 107-7, the floodplain administrator shall obtain, review and reasonably utilize any base flood elevation data and floodway data available from a federal, state or other source, in order to administer the provisions of this chapter....