692 So.2d 1161 (1997)
Percy SCHMILL
v.
ST. CHARLES PARISH.
No. 96-CA-894.
Court of Appeal of Louisiana, Fifth Circuit.
March 12, 1997.
*1162 Leon C. Vial, III, Hahnville, for Plaintiff/Appellee.
Alan A. Zaunbrecher, Todd L. Lacoste, Metairie, for Defendant/Appellant.
Before GRISBAUM, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Percy Schmill filed a petition for declaratory judgment against St. Charles Parish seeking a declaration that the parish is in violation of his constitutional rights by refusing to install a public sewer system, and by refusing to alleviate the drainage problems existing along Schmill Street, in Boutte, Louisiana. Defendant, St. Charles Parish, filed exceptions of vagueness, no cause of action, improper cumulation of actions, and improper use of summary proceedings. Subsequently, Schmill filed a supplemental and amending petition alleging that the parish committed several acts approximately three years earlier which impaired the drainage on his property and caused a flooding problem. Those acts included blocking the drainage ditch that drained his property into the Blouin Canal, and improperly looping a waterline serving the property. He also makes an allegation that the expansion of a church on the west side of his property with the absence of drainage ditches further impaired the drainage.[1] After a hearing, the trial court denied the exceptions and ordered the parish to answer the suit.
A second supplemental and amending petition added several other plaintiffs who also own property on Schmill Street. They ask for declaratory relief and compensation for damage to their property, and mental anguish. All plaintiffs filed a third supplemental and amending petition in which they assert that Schmill Street has been maintained by the parish for a period sufficient to render it a public street. In that petition they pray for judgment entitling them to street, sewer and drainage improvements. Defendant filed an answer to the original petition and supplemental and amending petition, and a second answer to the second supplemental and amending petition. However, there is no answer contained in the record to the third supplemental and amending petition.
The matter proceeded to trial, after which the trial court rendered judgment in favor of plaintiffs and against the parish declaring *1163 Schmill Street to be a public road and denying damages, but ordering the St. Charles Parish Council to immediately correct the drainage along Schmill Street. St. Charles Parish appeals that judgment.
At the trial on the merits, Percy Schmill testified that he purchased the property in 1945. Later, he developed a subdivision by building a shell and asphalt street which divided the property. He sold some of the lots to his children.[2] At that time there was natural drainage into the Blouin Canal which borders the rear of the property, making additional drainage unnecessary. In subsequent years a large church was constructed on one side of the property and a new subdivision was constructed on the other. Mr. Schmill contends that both the church and the subdivision were built higher than his property, causing drainage problems. He asserts that runoff water from the church property flows onto his property causing his house and shed to flood. Mr. Schmill explained that he attended public meetings before the church was constructed and voiced his concerns, but promises extracted from the builders of the church to address his concern about the drainage problems were not kept. Mr. Schmill identified photographs, later introduced into evidence, of flooded property along Schmill Street.
Mr. Schmill testified that when he first built the subdivision, the parish did not have a public sewerage system. In 1967, a sewerage line was run along Highway 90, fronting his property. However, he was told that since his street was less than fifty feet wide, the sewerage line could not be extended into the subdivision. Several subsequent attempts by Mr. Schmill to get public sewerage failed.
Mr. Schmill further testified that the parish has maintained Schmill Street at least since 1964. The parish delivered shells and graded the street on a regular basis, keeping it maintained. He also asserts that the Blouin Canal, which was originally dug to provide drainage in 1912, is now dammed up by concrete slabs dumped into it by the parish. He further stated that the parish stopped up the small canal which runs behind his property to the Blouin Canal about the same time, when a water line was installed. According to Mr. Schmill's testimony, there was a water line running along Melanie Street which came to a dead end.[3] To correct the situation, the parish "dug over the ditch" which provided drainage of Mr. Schmill's property to the Blouin Canal. Work on the water line left a four foot trench down the middle of Schmill Street, as well as several other holes. Although Mr. Schmill cited drainage problems caused by the water line project, he acknowledged that he did benefit from the project because the area now has "stable water".
After many requests by Mr. Schmill, the parish repaired the road in 1991, blacktopping part of it. Mr. Schmill testified that the area floods often, but if the ditch in the rear of the property and the Blouin Canal are not blocked, the water drains off quickly.
Kenny Schmill, Percy Schmill's son, testified that the parish has been maintaining the street for approximately twenty-five years by dumping shells and grading it. He further testified that the parish installed a street light in 1968.
In 1986, a church was built on adjacent property. The grading of the church lot incorrectly routed runoff water to the back of the property rather than onto Highway 90. That additional runoff, coupled with the continued practice of dumping concrete and other materials into the Blouin Canal by the parish, created drainage problems for Schmill Street property owners. In 1989, a heavy rain occurred, causing severe flooding in the Schmill Street area. Residents began to experience problems with overflow of sewerage. Circumstances deteriorated even more and the Board of Health threatened punitive action against the residents. Most of them were forced to move out. Only nine of the approximately twenty-one trailers which were originally on the street remain.
*1164 Kenny Schmill stated that he attended meetings to resolve the problem, but was told that public dedication of the street would require an expenditure by residents of the street of about $150,000.00.
In 1993 the adjacent church expanded and constructed a levee about one foot high on the west side of the property which abuts the Schmill Street property. However, the levee has been ineffective in controlling runoff from the church property. Mr. Schmill opined that, if the parish would install a sewer, the drainage problems would be solved.
Mr. Schmill explained that there are two houses at the beginning of Schmill Street, belonging to Percy Schmill and Curtis Dufrene, which are connected to the parish sewerage system because they are within 300 feet of Highway 90. However, the other lots are too far away from the parish sewerage system access to be connected.
Curtis Dufrene, a homeowner on Schmill Street since 1970, corroborated the previous testimony given by the Schmills regarding the drainage problem residents experience on Schmill Street. He further agreed that the parish has been maintaining the street for the entire twenty-five year period he lived there.
In connection with Mr. Dufrene's testimony, various documents were introduced, including photographs of the area in which the flooding is depicted. Also introduced were two ordinances which indicate that streets less that fifty feet wide in Ama, Louisiana were dedicated, and various letters chronicling the promises of street improvements over the past fifteen years.
Mr. Dufrene explained that he was instrumental in getting the parish to run a new water line down Schmill Street. The water line project was necessary because the existing line was only one inch pipe which was inadequate to provide a stable water supply for residents. Further, the installation of fire hydrants were needed for the safety of the citizens and the reduction of fire insurance rates. The project was also necessary to solve a problem of stale water due to a dead end line on the next street.
After the water line was laid in Schmill Street, the parish filled in the hole with shells and graded the street on a regular basis from 1990 to 1993. Then, in 1993 the parish paved the front part of Schmill Street, and blacktopped the rest.
Timothy Vial, Administrative Officer for the St. Charles Parish President's office for the past fifteen years, testified that he had several meetings concerning the request for a sewerage line on Schmill Street. He explained that the water line project had a two-fold purpose of looping the dead end water line on an adjacent street back to Highway 90, and providing the residents of Schmill Street with a stable water supply and individual meters.
He further stated that the parish considers Schmill Street to be a private street because dedication to the parish requires a fifty foot right of way according to current zoning ordinances. Consequently, Schmill Street, which is only twenty-six feet wide, would not meet the specifications. Mr. Vial acknowledged that the parish has accepted a number of roadways which do not meet the width requirements. He explained that there is a variance procedure by which a petition is made by citizens to have the parish make certain road improvements. Public hearings are held on the issue and if the parish council determines that there is enough interest from the residents in the area to proceed with the program, it is implemented. Once the final cost of the project is ascertained, a front foot assessment is established for each property owner on the street. The property owners then have the option of paying the assessment immediately or over a ten to fifteen year period.
However, on further questioning, Mr. Vial explained that the requirement of a fifty foot right of way was established by a 1969 ordinance and does not apply to subdivisions plotted before that time. Thus, in a subdivision plotted before 1969, a street under fifty feet in width would not require a variance to be dedicated. The date the subdivision was plotted would effect the dedication of the street, not the decision whether to install the sewers.
*1165 Mr. Vial opined that even if a variance was required, the twenty-six foot width would probably not be a barrier to dedication because the parish has accepted streets of that width previously. Mr. Vial stated the problem is the length of the street and the amount of the improvements necessary. He explained that the parish considers the economic feasibility of the project, given the cost of the sewer line and the few people it would serve. However, Mr. Vial admitted that no feasibility study had been conducted on the Schmill Street area since it is a private street. Mr. Vial stated that he knew of similar situations in the parish in which sewers were installed. However, the property owners made the improvements and then paid the tie-in fee to the parish.
In seven assignments of error on appeal, the parish argues that the trial court erred in its declaration that Schmill Street is a public roadway and that the court erred in ordering the parish to immediately correct the drainage along Schmill Street. We will first consider the declaration of the street as a public roadway. LSA-R.S. 48:491 B(1)(a) provides:
All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
The above statute provides a method for "tacit dedication" of a private street. In the two-pronged test required by the statute for such "tacit dedication" it must first be shown that there had been sufficient maintenance; and second that the landowner had knowledge of, or acquiesced in the public maintenance. Moret v. Williams, 582 So.2d 975 (La.App. 1 Cir.1991).
In the case at bar, the trial court found that both prongs of the test were proven by the plaintiff. Our review of the factual findings of the trial court are restricted to a manifest error/clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La. 1989). This court will not disturb a finding of fact by the trial court absent manifest error. Rosell v. ESCO, supra; Caracci v. Vail, 96-147 (La.App. 5 Cir. 6/25/96), 676 So.2d 1106; writ denied 96-1892 (La.10/25/96), 681 So.2d 377. Given the testimony of several of the Schmill Street residents that the parish has maintained the street over the years since some time in the 1960's, and the specific testimony that the parish shelled, graded, paved and blacktopped the road from about 1990 to 1993, we find no manifest error in the factual findings by the trial court which resulted in the declaration of Schmill Street as a public street.[4]
Defendants also challenge the second part of the judgment in which the trial court ruled that a, "mandatory injunction issue herein, ordering St. Charles Parish Council to immediately correct the drainage along Schmill Street to allow drainage from Highway 90 into the Blouin Canal".
St. Charles Parish argues that the order was an improper granting of a mandatory injunction, or in effect, a mandamus to the parish. The parish challenges the order on several grounds. They assert that the trial court erred in granting the remedy of a mandatory injunction when it was not petitioned for by the plaintiff. They further assert that a petition for declaratory judgment is an improper vehicle for a grant of monetary relief, and for the specific relief granted in this instance.
It is clear from the reasons for judgment that the trial court found that certain actions taken by the parish created an obstruction of the drainage on Schmill Street. While we cannot find error in that factual finding, we believe the mandatory injunction ordering the parish council to repair the damage it caused is problematic.
*1166 The judgment provides injunctive relief for obstruction of drainage in a declaratory judgment proceeding. An action for declaratory relief is designed to provide a means for adjudication of rights and obligations in cases involving an actual controversy that has not reached the stage where either party can seek a coercive remedy. Chauvet v. City of Westwego, 599 So.2d 294, 296 (La.1992). Generally, the purpose of a declaratory judgment pursuant to LSA-C.C.P. arts. 1871 et seq. is simply to establish the rights of the parties or to express the opinion of the court on a question of law without ordering anything to be done. Bergen Brunswig Drug Co. v. Poulin, 93-1945 (La.App. 1 Cir. 6/24/94), 639 So.2d 453.
However, LSA-C.C.P. art 1878 provides that "further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." A mandatory injunction was held to be appropriate relief in a suit for declaratory judgment where the right to injunctive relief follows a right declared in a declaratory judgment. See, Chauvet v. City of Westwego, supra. Here, the supplemental relief granted is an order that the parish alleviate the drainage problems caused by obstructions which resulted from the building of a church nearby, and the dumping of concrete and other debris by the parish. That relief does not follow from the declaration that Schmill Street is a public roadway. Relief for obstructions to drainage exists for private lands and is more properly brought in a damage suit. See: LSA-C.C. arts. 655 and 656. In the case at bar, such a claim does not require a declaration of rights. Further, it is evident from the plaintiffs' testimony that the construction of a church, not a party to this litigation, on adjoining property was also a cause in the drainage problems.
Even if we consider the mandatory injunction to be a mandamus to the parish council, we cannot affirm it. A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved may cause injustice. LSA-C.C.P. art. 3862. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. LSA-C.C.P. art. 3863. It is not an appropriate procedure where there is an element of discretion left to the public officer. Starlight Homes, Inc. v. Jefferson Parish Council, 93-746 (La.App. 5 Cir. 2/9/94), 632 So.2d 3; writ denied, 637 So.2d 462 (La.1994); Although the parish has a ministerial duty to maintain the roads and bridges under its jurisdiction in good repair, the manner in which the work is done and the priority given to the repair of individual roads and bridges are matters which rest within the discretion of the parish officials. Giambelluca v. St. Charles Parish, 96-364 (La.App. 5 Cir. 1/14/96), 687 So.2d 423.
Consequently, we find the issuance of a mandatory injunction ordering the St. Charles Parish Council to alleviate the drainage obstruction in a declaratory judgment proceeding in error, and we vacate that portion of the judgment. In all other respects the judgment is affirmed. Costs of this appeal are divided equally between the parties.
VACATED IN PART; AFFIRMED IN PART.
CANNELLA, J., concurs in part and dissents in part.
CANNELLA, Judge, concurring in part and dissenting in part.
I concur in the majority opinion insofar as it affirms the trial court declaration that Schmill Street is a public street. However, I disagree with the finding of the majority that the trial court erred in ordering the St. Charles Parish Council (the Parish) to correct the drainage problem which the trial court found that the Parish had caused. In my view, the trial court judgment was authorized by law and appropriate under the circumstances of this case. The majority's finding to the contrary is based on a reading of multiple pleadings that is too narrow, as is the limiting of the declaratory judgment.
Plaintiffs, within their petition and three supplements thereto, presented factual allegations to the trial court indicating that the Parish was directly responsible for causing the drainage problems that resulted in damages to plaintiffs. The plaintiffs asked the trial court to "declare" that the Parish was *1167 responsible for the drainage problems. They also expressly requested that the trial court award them damages as well as all other necessary relief.
As acknowledged by the majority, the trial court had the authority to grant any necessary relief, including a mandatory injunction, following a favorable finding on their demand for declaratory relief. La. C.C.P. arts. 1871 & 1878; Chauvet v. City of Westwego, 599 So.2d 294 (La.1992). It is evident in this case, that where the trial court finds and declares that the Parish is responsible for causing the drainage problems that are adversely affecting the plaintiffs, the order directed toward the Parish to correct the problems constitutes necessary relief from the favorable finding on plaintiffs' demand for declaratory relief and is, therefore, appropriate.
Accordingly, for these reasons, I concur in part and dissent in part from the majority decision.
NOTES
[1] The church is not named and the only defendant in the suit is St. Charles Parish.
[2] Mr. Schmill's children are the additional plaintiffs added by supplemental and amending petition.
[3] Mr. Schmill does not indicate in his testimony where Melanie Street is located, but it is apparently adjacent to the property in question.
[4] We also note that the defendant did not answer the third supplemental and amending petition in which this claim was made for the first time.