BROWN, Chief Judge.
 

 |,Plaintiffs, Charles Edward Green, Lee Ernest Green, Joann Green Howard and Rodney James Green, are the children of Jim Herndon and Pastoría Green.
 
 [1]
 
 Plaintiffs were born during an 11-year-period, 1950 to 1961, in which Jim Herndon and Pastoría Green resided together in Vivian, Louisiana. Jim Herndon died intestate on November 14,1977.
 

 Jim Herndon’s siblings, Maggie Hern-don Payne, Lou Patsy Herndon Harris, Joe Herndon, Harold Herndon, and Lee Ernest Herndon, filed a petition for possession on November 26, 1978, and obtained a judgment on November 29, 1978, which placed them into possession of Jim Herndon’s estate. Defendants’ petition for possession did not mention that Jim Hern-don had any children.
 

 On November 16, 2008, plaintiffs filed a petition to annul and vacate the judgment of possession. In response, defendants, Jim Herndon’s surviving sibling and the estates of his now deceased siblings, filed a peremptory exception of prescription, which the trial court, citing La. C.C. art. 197 and
 
 Dennis v. Stewart,
 
 04-405 (La.App. 5th Cir.10/12/04), 887 So.2d 539, granted on July 13, 2009.
 
 [2]
 
 As a result of the trial court’s ruling, plaintiffs have appealed. For the reasons stated herein, we affirm.
 

 |⅞Discussion
 

 Plaintiffs, the children of decedent, were born out-of-marriage and were not formally acknowledged. Over the past 30 years the law, both statutory and case law, has significantly evolved in respect to an out-of-marriage child’s right to inherit from his parents.
 
 [3]
 
 In 1977, children born outside of
 
 *436
 
 marriage, even if acknowledged, could not inherit from the intestate estate of an alleged father if there was a legitimate relative.
 
 [4]
 
 Thus, at the time of Jim Herndon’s death, defendants, as legitimate collaterals, would have rightfully inherited Jim Hern-don’s estate to the exclusion of his out-of-marriage children. On September 3, 1980, however, the Louisiana Supreme Court’s opinion in
 
 Succession of Brown,
 
 388 So.2d 1151 (La.1980), was rendered. In that case the supreme court held that civil code article 919 unconstitutionally denied children born outside of marriage equal protection under the law. The supreme court later determined that its holding in
 
 Succession of Brown
 
 was to be applied retroactively to the effective date of the 1974 Louisiana Constitution, January 1, 1975.
 
 See Succession of Clivens,
 
 426 So.2d 585 (La.1982).
 

 This retroactive application created an opening for children born outside of marriage, such as plaintiffs, to inherit from their father in either equal parts to children born of his marriage or to the exclusion of legitimate ^collaterals, such as defendants, when a father died intestate. In anticipation of
 
 Succession of Brown,
 
 the Louisiana Legislature began reworking the civil code articles pertaining to children born outside of marriage. The revised set of articles set forth two scenarios in which children born outside of marriage, but who had not been legitimated, could inherit from their alleged father’s intestate estate.
 
 [5]
 
 The first scenario was when a child had been formally acknowledged by the father in accordance with article 203.
 
 [6]
 
 And the second scenario was when the child or someone on his behalf proved filiation in a civil proceeding.
 
 [7]
 
 The peremp-tive period in which to bring this action to prove filiation was either before the child reached the age of 19 or within 1 year of the death of the alleged parent, whichever occurred first.
 
 [8]
 
 Taking into account the retroactive application of
 
 Succession of Brown, supra,
 
 and the state’s interest in the stability of land titles, the legislature created a grace period in which unacknowledged or informally acknowledged children born outside of marriage who had
 
 *437
 
 already attained the age of 19, or whose alleged parent was already deceased, could bring a |4civil proceeding to prove their filiation. Children who failed to bring their action during this time could not thereafter establish filiation. The grace period ended September 12,1982.
 
 [9]
 

 Plaintiffs put forth no evidence to show that they were formally acknowledged by Jim Herndon, nor did they show that they instituted a civil proceeding to prove filiation prior to September 12, 1982. Instead plaintiffs argued at the trial court and now on appeal that because their father died prior to the revisions to article 209, the law as it was then written should be applied to prove their filiation; specifically that a method of proving paternity was to show that the mother lived in a state of concubinage with the father during the period of time that the child was conceived, and further the law at that time did not set forth a one-year peremptive period to establish filiation.
 
 [10]
 
 The trial court, citing
 
 Dennis, supra,
 
 determined otherwise.
 

 |Jn
 
 Dennis, supra,
 
 Todd Dennis, a child born during his father’s marriage, sought a declaratory judgment to establish himself as the sole heir to the estate of his late father, who had died on October 81, 1994. Contesting the declaratory judgment were the out-of-marriage descendants of the decedent. Although the facts of the case showed that the decedent informally acknowledged the children born outside of his marriage, the appellate court noted that the record was devoid of any evidence that he formally acknowledged them or that they filed an action to prove paternity within the grace period afforded them under art. 209 as amended by Act 720.
 

 Plaintiffs contend that the facts of
 
 Dennis, supra,
 
 are so distinguishable from the present set of facts that the trial court’s reliance on
 
 Dennis
 
 was erroneous. Plaintiffs’ primary point of distinguishment is that the decedent in
 
 Dennis
 
 died in 1994, making the post-1980 revisions to art. 209 applicable, whereas their father died in 1977 when art. 209 provided alternative methods to prove filiation and did not contain a one-year peremptive period in which to institute such an action. Moreover, due
 
 *438
 
 to the absence of any peremptive period to prove filiation at the time of their father’s death, plaintiffs posit that La. C.C. art. 3502, which provides a 30 year liberative prescriptive period from the opening of a succession in which an heir may file an action for the recognition of a right of inheritance, should have been applied by the trial court.
 

 Our review of the case law, statutory law, and the legislative intent behind the statutory law leads us to conclude that the trial court’s granting |fiof defendants’ peremptory exception of prescription was not erroneous. Professor Katherine Spaht of the Louisiana State University Law Center discussed both Act 549 of 1980 and Act 720 of 1981, both of which amended art. 209, in
 
 Developments in the Law, 1979-1980-Persons,
 
 41 La. L.Rev. 372 (1981) and
 
 Developments in the Law, 1980-1981-Persons,
 
 42 La. L.Rev. 403 (1982). In the former article, Professor Spaht stated:
 

 The purpose of the [grace period] section is similar to a statute of repose because the legislature anticipated that
 
 Succession of Brown
 
 might be retroactive. If the decision declaring article 919 unconstitutional were applied retroactively, an illegitimate could seek to annul a judgment of possession in a succession in which he was not recognized as an heir... .By including a [grace] period ending [September 12, 1982], within which illegitimates may bring a civil proceeding to establish filiation, the retroactive application of
 
 Brown
 
 would create fewer problems. An illegitimate child who has been formally acknowledged ... is not affected, however, by the [grace] period. (Footnotes omitted).
 

 41 La. L.Rev. 372, 387. Furthermore, in discussing the hardship that the grace period placed on a 19-year-old or older child born outside of marriage, Professor Spaht stated:
 

 [T]he illegitimate child affected by [the grace period section] did not have the possibility of inheriting as a legitimate child until September 3, 1980. The illegitimate child, thereafter, had [the grace period] within which to file the action to establish filiation and, if successful, the possibility of inheriting property of the deceased parent. Of course, the purpose of the legislature in enacting [the grace period] was to avoid subjecting the other heirs to the possibility of such suits indefinitely in the interest of stability of land titles. (Footnotes omitted).
 

 42 La. L.Rev. 403, 412.
 

 Clearly the legislature’s inclusion of the grace period during which a child born outside of marriage, who was not formally acknowledged and who had already attained the age of 19 or whose parent was already |7deceased, must bring their legal proceeding to establish filiation, signified its intent to apply to situations such as the one presently before us. The evidence and arguments put forth by plaintiffs establish that they were, at best, informally acknowledged. An informal acknowledgment, and more specifically proof that the mother and father lived together at the time of conception, were and are considered relevant evidence to aid an out-of-marriage child establish filiation. See La. C.C. art. 197, Comment (c); former Civil Code art. 209, Comment (b) (rev.1981). That evidence, however, would have had to have been presented during a civil proceeding instituted during the grace period accorded to plaintiffs by the legislature. Since plaintiffs failed to timely bring such an action, we are constrained to affirm the trial court’s granting of defendants’ peremptory exception of prescription.
 

 
 *439
 

 Conclusion
 

 For the aforementioned reasons, the judgment of the trial court granting defendants’ peremptory exception of prescription is affirmed. Costs of this appeal are assessed to plaintiffs.
 

 AFFIRMED.
 

 [1]
 

 . The children's respective birthdates are October 27, 1954; January 9, 1957; February 17, 1959; and September 16, 1961.
 

 [2]
 

 . La. C.C. art. 197 is the current article governing a child's action to establish paternity and the peremptive period thereto. Article 197, however, is not applicable in the present case since, as we discuss more fully
 
 infra,
 
 plaintiffs’ claim had prescribed prior to its enactment.
 
 See In re Succession of McKay,
 
 05-603 (La.App. 3d Cir.02/01/06), 921 So.2d 1219,
 
 writs denied,
 
 06-0504, 06-0631 (La.06/02/06), 929 So.2d 1252, 1253.
 

 [3]
 

 .The evolution of the statutory law has led over time to the repeal, replacement and/or revision of many of the civil code articles applicable to the facts herein. While we will be referring to and utilizing some of these former articles, we note that many of the current civil code articles pertaining to children born outside of marriage, establishment
 
 *436
 
 of paternity, and acknowledgment have evolved out of these former articles.
 

 [4]
 

 . Former La C.C. art. 919, enacted in 1908 and repealed in 1981, barred acknowledged illegitimate children from inheriting from their natural fathers in the same manner as legitimate descendants, ascendants, collateral relatives and surviving spouses.
 

 [5]
 

 . Former La. C.C. art. 198 provided that "[ill-legitimate children are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them as their children, either before or after the marriage.”
 

 [6]
 

 . Former La. C.C. art. 203: "The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the father and mother or either of them, or it may be made in the registering of the birth or baptism of such child.”
 

 See La. C.C. art. 196 for the current law pertaining to formal acknowledgment.
 

 [7]
 

 . In 1980, the legislature passed Act 549, which amended civil code articles 208 and 209, to establish a procedure for a child born outside of marriage who was neither formally acknowledged nor legitimated to prove his filiation to an alleged parent. The civil code articles as amended, however, created problems in their interpretation and application. Thus, in 1981 the legislature passed Act 720, once again amending civil code articles 208 and 209.
 

 [8]
 

 . Act 549 stated that "[a] civil proceeding to establish filiation must be brought within six months after the death of the alleged parent, or within nineteen years of the illegitimate child's birth, whichever occurs first.” Act 720, however, changed the peremptive period to initiate a proceeding after the death of an alleged parent to one year.
 

 [9]
 

 . Section 4 of Act 549 provided that "[a]ny illegitimate child nineteen years of age or older shall have one year from the effective date of this Act to bring a civil proceeding to establish filiation under the provisions of this Act and if no such proceeding is instituted within such time, the claim of such an illegitimate shall be forever barred.” The effective date of Act 549 was July 23, 1980. The wording of Section 4 of Act 549, however, seemed to prevent an out-of-marriage child under 19 years old whose alleged parent had died more than six months before July 23, 1980, from establishing filiation. Thus, Section 2 of Act 720 provided that "any person against whom the time period in this Act would otherwise have accrued except for the provisions of this Section shall have one year from its effective date to bring a proceeding to establish filiation of a child.” The effective date of Act 720 was September 11, 1981.
 

 In order to minimize the confusion of there being two one-year peremptive periods, we refer to the period starting July 23, 1980 and ending September 12, 1982, as the "grace period.”
 

 [10]
 

 . Prior to its revision, La. C.C. art. 209 provided:
 

 In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
 

 1. By all kinds of private writings, in which the father may have acknowledged the bastard child as his child, or may have called him so;
 

 2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
 

 3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.