SUCCESSION OF CLINTON CAMERON SCHREIBER

NO. 24-CA-60

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 810-343, DIVISION "D"
HONORABLE JOSEPH A. MARINO, III, JUDGE AD HOC, PRESIDING

November 20, 2024

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Stephen J. Windhorst

**<u>AFFIRMED</u>**
    **JGG**
    **MEJ**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR INTERVENOR/APPELLANT,
ROBERT HUTCHESON
    William R. Penton, III
    Maurice V. Piza
    Martin J. McGuane

COUNSEL FOR PLAINTIFF/APPELLEE,
BRIAN GREWE, INDEPENDENT ADMINISTRATOR OF THE SUCCESSION
OF CLINTON CAMERON SCHREIBER AND CAROLE SCHREIBER GREWE
AND CLAIRE FRANCES SCHREIBER
    M. Suzanne Montero
    Meghan E. Carter
    Graham H. Williams
    Kevin J. Naccari, Jr.

COUNSEL FOR PLAINTIFF/APPELLEE,
LOUISIANA ATTORNEY GENERAL LIZ MURRILL
    Elizabeth B. Murrill
    Terrel T. Kent
    Chimene Y. St. Amant
    David J. Smith, Jr.

**GRAVOIS, J.**

Intervenor/appellant, Robert J. Hutcheson II,[1] intervened in the Succession of Clinton Cameron Schreiber, alleging that he was Mr. Schreiber's unacknowledged and unaffiliated biological son, and he desired to be recognized as his biological son so that he could exercise his right to inherit from Mr. Schreiber's estate. The Succession filed exceptions of no right of action and peremption to Mr. Hutcheson's intervention, arguing that Mr. Hutcheson's intervention was well after the peremptive time period allowed by La. C.C. art. 197, entitled "Child's Action to establish paternity; proof; time period," for requesting filiation. These exceptions were granted on April 28, 2023.

Mr. Hutcheson also filed a Motion for Declaratory Judgment in the succession proceeding, seeking a declaration that La. C.C. art. 197 was unconstitutional on equal protection and due process grounds. The trial court denied the Motion for Declaratory Judgment on September 8, 2023, finding the article constitutional. Mr. Hutcheson appeals the denial of his Motion for Declaratory Judgment.

In brief to this Court, Mr. Hutcheson also appeals the judgment of April 28, 2023 which granted the Succession's peremptory exceptions of no right of action and peremption to Mr. Hutcheson's intervention. As further explained below, the April 28, 2023 judgment granting the Succession's peremptory exceptions is an interlocutory judgment that is not before this Court at this procedural juncture, and thus any assignment of error particular to that judgment is pretermitted.[2]

---

[1] In the record, Mr. Hutcheson is identified interchangeably as "Robert Hutcheson," "Robert Hutcheson, II," "Robert J. Hutcheson, II," and "Robert J. Hutcheson, III."

[2] In brief, Mr. Hutcheson argues that the trial court erred in granting the exceptions because La. C.C. art. 197 is unconstitutional, which we consider herein in the context of the appeal of the declaratory judgment.

24-CA-60                                    1

For the following reasons, we affirm the trial court's declaratory judgment of September 8, 2023, finding La. C.C. art. 197 constitutional. We remand the matter to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On July 14, 2020, Clinton Cameron Schreiber died intestate. His widow, Peggy O'Neill Schreiber, petitioned the court to open his intestate succession on September 18, 2020. Therein, she alleged that Mr. Schreiber had no children nor had he adopted anyone, and was survived by her and his two adult sisters. The succession was duly opened.[3]

Over two years later, on November 3, 2022, Mr. Hutcheson filed a Petition to Intervene in the Succession of Clinton Cameron Schreiber, alleging that he (Mr. Hutcheson) was the biological child of Mr. Schreiber. In response thereto, the Succession filed an exception of vagueness and ambiguity, which the trial court granted, allowing Mr. Hutcheson time to amend. Mr. Hutcheson then filed a First Supplemental and Amending Petition for Intervention, expounding and clarifying his allegations.

In his Petition to Intervene and his First Supplemental and Amending Petition for Intervention, Mr. Hutcheson explained that his mother, Kathryn Jo Curry Hutcheson, and Mr. Schreiber had never married. She had kept the identity of his biological father a secret, only divulging this information to him about a month before she passed away on July 29, 2018. Mr. Hutcheson was born on February 21, 1976 and was given the name Robert Shawn Curry. When he was a small child, his mother married Robert James Hutcheson, who adopted him in a stepparent adoption proceeding in Tangipahoa Parish, wherein his name was changed to Robert James Hutcheson, II. Mr. Hutcheson alleged that it was in the

---

[3] On October 27, 2022, a consent judgment was entered appointing Brian Grewe, husband of one of the surviving sisters, as independent administrator.

"best interests of justice" to have his DNA compared to Mr. Schreiber's living sisters to show that he is biologically related to them and Mr. Schreiber. He stated that he wished to intervene to exercise his right to receive his inheritance.

The Succession responded to the Petition to Intervene and the First Supplemental and Amending Petition for Intervention on February 28, 2023 with peremptory exceptions of no right of action and peremption. Therein, the Succession argued that the unequivocal language of La. C.C. art. 197 operated to extinguish Mr. Hutcheson's right of action to filiate to the decedent by peremption, the action having been asserted (through the intervention in the Succession) more than one year after Mr. Schreiber's death. The Succession prayed that Mr. Hutcheson's intervention be dismissed with prejudice. The matter was set for a hearing on April 17, 2023.

On April 10, 2023, Mr. Hutcheson filed a Motion for Declaratory Judgment, conceding that the Succession's analysis of La. C.C. art. 197 was correct, but asserting that Article 197 is unconstitutional. He argued that he had a fundamental right to inherit from his father, and Article 197 adversely affected him because the time limitation destroyed his ability to seek filiation and inheritance rights. He argued that Article 197 was "unreasonable, arbitrary and capricious because it does not serve a legitimate state purpose" and treats legitimate and illegitimate children differently. He argued that the statute was a "flagrant" violation of equal protection because it created a difference in the class of children who may inherit from their fathers.

Also on April 10, 2023, Mr. Hutcheson filed an opposition to the Succession's exceptions of no right of action and peremption, asserting that Article 197 is unconstitutional for the same reasons argued in the Motion for Declaratory Judgment.

The matters came on for a hearing via Zoom on April 17, 2023.[4]  In a written judgment dated April 28, 2023, the trial court granted the Succession's peremptory exceptions of no right of action and peremption, but allowed Mr. Hutcheson fifteen days from the date of the hearing to cure the deficiencies in his petitions to intervene, if he could.  If he failed to do so, the court ruled that the claims "shall be dismissed with prejudice."  The trial court also allowed Mr. Hutcheson thirty days to cure any procedural deficiencies in his Motion for Declaratory Judgment regarding the constitutionality of Article 197.

The designated appellate record before us fails to show that Mr. Hutcheson amended his petitions for intervention within the fifteen days allowed by the trial court in its April 28, 2023 judgment.  However, on May 30, 2023, Mr. Hutcheson filed a Supplemental Motion for Declaratory Judgment, adding paragraphs 12 through 14, which argued the applicability of the analysis in this Court's decision in *Kinnett v. Kinnett*, 17-625 (La. App. 5 Cir. 12/28/22), 355 So.3d 181 ("*Kinnett I*"), which had declared La. C.C. art. 198, relative to a biological father's ability to establish paternity to his child, unconstitutional as applied to the putative father.

The State Attorney General's Office filed a Memorandum in response to Mr. Hutcheson's motions for declaratory judgment, arguing for the constitutionality of Article 197.  The Succession adopted the arguments therein.  The Succession filed a supplemental opposition on July 26, 2023, noting that the Supreme Court had recently reversed this Court's ruling in *Kinnett I*, in *Kinnett v. Kinnett*, 23-0060 (La. 6/27/23), 366 So.3d 25, *cert. denied sub nom. Andrews v. Kinnett*, 144 S.Ct. 493, 217 L.Ed.2d 258 (2023), and arguing that any position of Mr. Hutcheson premised on this Court's now-reversed opinion in *Kinnett I* was now invalid.

---

[4] The transcript of this hearing was not designated to be included in the appellate record.

Mr. Hutcheson moved for and was granted leave to file a Second Supplemental and Amending Motion for Declaratory Judgment on August 11, 2023. Therein, he made additional arguments relative to denial of due process and violation of equal protection. The Attorney General filed an opposition thereto, asserting all previously made arguments against the claim of Article 197's unconstitutionality, but conceding that Mr. Hutcheson's Second Supplemental and Amending Motion satisfied the requirements of *Vallo v. Gayle Oil Company, Inc.*, 94-1238 (La. 11/30/94), 646 So.2d 859, that the mover must particularize the constitutional claims.

The declaratory judgment action came on for a hearing on August 29, 2023. After consideration, the trial court orally denied Mr. Hutcheson's request for declaratory judgment, finding that Article 197 is constitutional under both the Louisiana Constitution, as well as the United States Constitution. A written judgment to this effect was signed on September 8, 2023.

On November 7, 2023, Mr. Hutcheson filed a motion for devolutive appeal, seeking to appeal the judgment on the motion for declaratory relief dated "August 30, 2023" and mailed on September 12, 2023.[5] Mr. Hutcheson designated only the August 29, 2023 transcript and other particular pleadings to be included in the appellate record.

## JURISDICTIONAL NOTE

In brief, Mr. Hutcheson seeks this Court's appellate review of the judgment of April 28, 2023 which granted the Succession's peremptory exceptions of no right of action and peremption to his petition for intervention, as well as the September 8, 2023 judgment denying his motion for declaratory judgment.

---

[5] It appears that "August 30" is a typo, as the hearing was held on August 29, 2023 and the judge ruled from the bench. A written judgment was entered on September 8, 2023; notice of judgment was mailed by the Clerk of Court on September 11, 2023.

As previously noted, however, Mr. Hutcheson's notice of appeal specifically appeals only the latter judgment, and designates only the transcript of the August 29, 2023 hearing pertaining to this judgment. A judgment on a motion for declaratory judgment is a final judgment, as per La. C.C.P. art. 1871.[6]

The judgment granting the Succession's peremptory exceptions of no right of action and peremption is interlocutory, because it determined preliminary matters in the intervention and it did not dismiss the intervention. As this Court explained in *Sporl v. Sporl*, 00-1321 (La. App. 5 Cir. 5/30/01), 788 So.2d 682, 683-84, *writ denied*, 01-1926 (La. 10/12/01), 799 So.2d 506, an interlocutory judgment determines "preliminary matters in the course of the action" and is generally non-appealable, citing La. C.C.P. arts. 1841 and 2083.

The April 28, 2023 judgment did not dismiss Mr. Hutcheson's intervention. A ruling that sustains a peremptory exception and allows a period of time for an amendment of the petition is not a final judgment or an appealable interlocutory judgment. *Atchafalaya Basinkeeper v. Bayou Bridge Pipeline, LLC*, 18-0417 (La. App. 1 Cir. 2/22/19), 272 So.3d 567. Such a judgment merely permits an amendment within the delay allowed by the court as provided by La. C.C.P. art. 934, and does not dismiss the plaintiff's suit nor any party to the suit. This is so because even if the period within which to amend has passed, the plaintiff may still amend unless the defendant has moved for dismissal. *Schroeder v. Bd. of Sup'rs of Louisiana State Univ.*, 540 So.2d 380, 382 (La. App. 1 Cir. 1989).[7] The designated

---

[6] La. C.C.P. art. 1871 states:

Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. *The declaration shall have the force and effect of a final judgment or decree*. (Emphasis added.)

[7] *See also Landry v. Les Fontaine Funeral Home, Inc.*, 99-1157 (La. App. 3 Cir. 12/8/99), 755 So.2d 901, 903-04 ("despite the passage of the amendment period and the provision that the matter shall be dismissed absent such an amendment, the matter is not dismissed until a formal

record before us fails to show that Mr. Hutcheson amended his petition for intervention within fifteen days, or at all, but the portion of the judgment stating that the intervention shall be dismissed with prejudice if not amended within fifteen days is not self-activating. A subsequent judgment of dismissal must be moved for and entered to dismiss the intervention. Moreover, the trial court's ruling on the motion for declaratory judgment did not effectuate the dismissal of the intervention.[8]

When an unrestricted appeal is taken from a final judgment, the appellant is entitled to a review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the correctness of the final judgment from which the party has taken the appeal. *Sporl*, *supra*, 788 So.2d at 683-84, citing *Bielkiewicz v. Ins. Co. of North America*, 201 So.2d 130 (La. App. 3 Cir. 1967). While the judgment herein on the exceptions is interlocutory, we find that it is not before this Court at this procedural juncture because it did not decide preliminary matters in the action for declaratory judgment. *See Sporl*, *supra*, 788 So.2d at 683-84.[9] The Motion for Declaratory Judgment is a separate and distinct action from the intervention. The exceptions were filed to defeat Mr. Hutcheson's intervention in the succession, not his Motion for Declaratory Judgment. Thus, the judgment granting the exceptions was not legally preliminary to the declaratory judgment proceeding. Accordingly,

---

judgment of dismissal is subsequently perfected ... if no formal motion for dismissal has been filed, an amendment can be made even after the expiration of the time set forth by the trial court.").

[8] Generally, the purpose of a declaratory judgment is simply to establish rights of parties or to express opinion of the court on a question of law without ordering anything to be done. *Schmill v. St. Charles Parish*, 96-894 (La. App. 5 Cir. 3/12/97), 692 So.2d 1161. A declaratory judgment action is an appropriate means of testing the constitutionality of a statute. *Westlawn Cemeteries, L.L.C. v. Louisiana Cemetery Board*, 21-01414 (La. 3/25/22), 339 So.3d 548.

[9] "Here, the ruling on the sources of Sporl's income was necessary to later accurately calculate Sporl's child support obligations, and thus, determined a preliminary matter. Therefore, when Sporl appealed the trial court's final determination of his child support responsibility, he also properly appealed the trial court's earlier judgment regarding the sources of that income. Accordingly, we review the evidence leading to the interlocutory decree."

the April 28, 2023 judgment on the peremptory exceptions is not before this Court at this procedural juncture, and is thus not reviewed herein.

## CONSTITUTIONALITY OF LA. C.C. ART. 197

La. C.C. art. 197 states:

A child may institute an action to prove paternity even though he is presumed to be the child of another man. If the action is instituted after the death of the alleged father, a child shall prove paternity by clear and convincing evidence.

*For purposes of succession only, this action is subject to a peremptive period of one year. This peremptive period commences to run from the day of the death of the alleged father.*

(Emphasis added.)

Mr. Hutcheson did not file his intervention until more than two years after Mr. Schreiber's death. Thus, the Succession argued that the cause of action to intervene for succession purposes was perempted under the clear language of Article 197. The crux of Mr. Hutcheson's argument regarding the constitutionality of Article 197 is that the one-year peremptive period "destroyed" his right to establish paternity. He argues that it unfairly discriminates against illegitimate children like himself, preventing him from exercising his fundamental right to inherit from his father. He argues that he is being denied equal protection under the law because an unaffiliated child like himself is subject to a one-year peremptive period (pursuant to Article 197), while legitimate children are subject to a thirty-year prescriptive period with regard to successions (pursuant to La. C.C. art. 3502). He also argues that the statute violates his rights to due process.

As a general rule, statutes are presumed to be constitutional. *W. Feliciana Par. Gov't v. State*, 19-00878 (La. 10/11/19), 286 So.3d 987, 993-94. Because the provisions of the Louisiana Constitution are not grants of power, but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. *Id.* Because a state statute is presumed constitutional, the party

challenging the statute bears the burden of proving its unconstitutionality. *Id.*; *see also State v. Brenner*, 486 So.2d 101 (La. 1986). However, this presumption does not apply when a statute infringes upon a fundamental right. *State v. Spell*, 21-00876 (La. 5/13/22), 339 So.3d 1125, 1131.

Unless the fundamental rights or privileges and immunities of a person are involved, a strong presumption exists that the legislature in adopting legislation has acted within its constitutional authority. *Polk v. Edwards*, 626 So. 2d 1128, 1132 (La. 1993). This presumption is especially forceful in the case of statutes enacted to promote a public purpose. *Id.* Where fundamental rights are at stake, due process is satisfied only when the government has a compelling interest that justifies infringing upon the right, and the law employs the least restrictive means to achieve the government's objective. *State v. Draughter*, 13-0914 (La. 12/10/13), 130 So.3d 855, 863.

Whether a statute is constitutional is a question of law. Accordingly, our standard of review is *de novo*. *State in Int. of M.H.*, 23-326 (La. App. 5 Cir. 12/27/23), 379 So.3d 759, 763, *writ denied*, 24-00122 (La. 9/4/24), 391 So.3d 1057.

## DUE PROCESS

La. Const. Ann. art. I, § 2 states: "No person shall be deprived of life, liberty, or property, except by due process of law." Exactly what process is due is dependent upon the peculiar facts involved. *Guo v. Southern University & A&M College Baton Rouge*, 342 So.3d 70, 21-1163 (La. App. 1 Cir. 4/8/22). Due process is both procedural and substantive.

### Substantive Due Process

In order to prove a violation of substantive due process, Mr. Hutcheson "must first establish the existence of a constitutionally protected property or liberty interest." *Coxe Prop. Mgmt. & Leasing v. City of New Orleans*, 19-0911 (La. App.

4 Cir. 4/8/20), 294 So.3d 1098, 1104, citing *Boudreaux v. Larpenter*, 11-0410 (La. App. 1 Cir. 6/1/12), 110 So.3d 159, 170. "Once that interest has been established, a violation of substantive due process still requires arbitrary and capricious conduct by the governing authority." *Id.* "[G]overnment action comports with substantive due process if the action is rationally related to a legitimate governmental interest." *Id.*

Upon review, we find that Mr. Hutcheson has failed show that Article 197's peremptive time limit is arbitrary or capricious. This time limit, considered by the legislature when adopting the code article, is rationally related to the legitimate governmental interest of orderly descent and distribution of property, the stability of land titles, and the finality of judgments of possession. The State's interest in the orderly descent and distribution of property, the stability of land titles, and the finality of judgments is no mere hollow assertion, as Mr. Hutcheson argues, but is extensively acknowledged throughout this State's statutory law, as well as in jurisprudence, as a legitimate government purpose. *See*, *e.g.*, *Succession of Herndon*, 45,146 (La. App. 2 Cir. 4/28/10), 36 So.3d 434, 436, and Comments to Article 197.[10] Mr. Hutcheson has not shown otherwise.

It is irrelevant that in Mr. Hutcheson's case, no judgment of possession had yet been rendered when his one-year peremptive period had elapsed. Article 197's peremptive time limit does not state that a succession must be opened for it to apply.

***Procedural Due Process***

The central meaning of procedural due process is well settled: Persons whose rights may be affected by state action are entitled to be heard, and in order

---

[10] Additionally, the public records doctrine is founded upon our public policy and social purpose of assuring stability of land titles. *First NBC Bank v. Gusman*, 11-0458 (La. App. 4 Cir. 9/28/11), 79 So.3d 353, 357, *writ denied*, 11-2595 (La. 2/3/12), 79 So.3d 1030, citing *Camel v. Waller*, 526 So.2d 1086, 1089 (La. 1988).

that they may enjoy that right, they must first be notified. *In re Adoption of B.G.S.*, 556 So.2d 545, 549 (La. 1990). It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *Id.*

In this case, the enactment of Act 192 of 2005 (Article 197) by the Louisiana State Legislature is properly characterized as a legislative act. When a governmental action is characterized as legislative, procedural due process requirements do not apply. *Messina v. St. Charles Parish Council*, 03-644 (La. App. 5 Cir. 12/30/03), 865 So.2d 158, 161, *writ denied*, 04-0285 (La. 3/26/04), 871 So.2d 354, *cert denied*, 544 U.S. 1060; *see also Boudreaux v. Larpenter*, 11-0410 (La. App. 1 Cir. 6/1/12), 110 So.3d 159, 170.

### EQUAL PROTECTION

La. Const. Art. I, § 3, entitled "Right to Individual Dignity," states, in pertinent part: "No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations."

The Fourteenth Amendment to the United States Constitution states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Mr. Hutcheson argues that as applied to him, under the facts of this case, Article 197 is unconstitutional because it unduly interferes with his "fundamental right" to inherit from his father. He argues that equal protection means that the law will not discriminate between people of different groups in our society. He argues

that Article 197 treats illegitimate children such as him drastically differently from legitimate children.

There is no fundamental right in the State of Louisiana for *any* child, filiated or unaffiliated, over 23 years of age and not mentally or physically infirm, to inherit from their parents. In 1995, the voters of this State amended the Louisiana Constitution to abolish forced heirship except for children under 23 years of age, with an exception for older children with mental incapacity or physical infirmity who are incapable of taking care of their person, which is not applicable herein. Supplemental legislation to abolish forced heirship became effective January 1, 1996. *See In re Succession of Boyter*, 99-0761 (La. 1/7/00), 756 So.2d 1122. Mr. Hutcheson is admittedly over 23 years of age, and at all relevant times in this litigation, has not been mentally or physically infirm.

The equal protection clause does not require absolute equality or precisely equal advantages. *Beauclaire v. Greenhouse*, 05-0765 (La. 2/22/06), 922 So.2d 501, 505, citing *McCormick v. Hunt*, 328 So.2d 140, 142 (La. 1976). It is possible for parties to be treated differently without violation of equal protection rights. Equal treatment of all claimants in all circumstances is not required. *Id.*

In *Sibley v. Board of Supervisors of Louisiana State University*, 477 So.2d 1094 (La. 1985), the Supreme Court enunciated a three-tier evaluation to determine whether there was a violation of equal protection:

> Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.

Article 197 does not classify children by birth, contrary to Mr. Hutcheson's assertion. It makes no mention of legitimacy or illegitimacy, and permits children who are presumed to be the child of another man to institute an action to prove paternity to an alleged father.[11] Therefore, the third level of scrutiny would appear to apply. Under the third level of scrutiny, where the challenged classification is based on grounds other than discrimination because of birth, race, age, sex, social origin, physical condition, or political or religious ideas, the law creating the classification is presumed to be constitutional. Thus, the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the statute fails to serve a legitimate government purpose. *Beauclaire v. Greenhouse*, 922 So.2d at 505-06, citing *State v. Expunged Record (No.) 249,044*, 03-1940 (La. 7/2/04) 881 So.2d 104, 111.

Assuming arguendo that Article 197 classifies persons by birth, under the "medium" level of scrutiny stated in *Sibley v. Board of Supervisors of Louisiana State University*, *supra*, the State must show that the classification has a reasonable basis. The result of such analysis does not change the result, as the one-year peremptive period has a reasonable basis, as stated in the Comments to Article 197, that being, again, the stability of land titles and the finality of judgments of possession.

Mr. Hutcheson relies heavily on the Supreme Court case of *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) in support of his claims. However, that case is easily distinguishable. The *Trimble* court struck down an Illinois statute that precluded *any* illegitimate child, even a child acknowledged and supported, or where a paternity order had previously been entered, from inheriting from their father under any circumstances.

---

[11] Article 197 recognizes the concept of dual paternity.

Article 197's peremptive time period did not preclude Mr. Hutcheson from asserting a claim in Mr. Schreiber's succession timely. It is undisputed that Mr. Hutchison mother told him before she died in 2018 that Mr. Schreiber was his biological father. Mr. Hutcheson failed to act on this information prior to Mr. Schreiber's death, other than to "friend" Mr. Schreiber on Facebook and send him a message that his mother (Kathryn Curry Hutcheson) had passed away. He did not initiate a filiation proceeding during the approximately two remaining years in the life of Mr. Schreiber. He explained that he did not do so between the time of his mother's death and Mr. Schreiber's death because he was grieving and distraught over his mother's death and other compelling issues in his life.

Mr. Hutcheson testified at the declaratory judgment hearing that he had seen the notice of Mr. Schreiber's death on Facebook shortly after it occurred. Apparently, Mr. Hutcheson contacted Mr. Schreiber's widow and his two sisters with the allegation of his paternity, within the one-year period after Mr. Schreiber's death. Still, Mr. Hutcheson did not act in any way to legally establish filiation until he intervened in the Succession in November of 2022, more than two years after Mr. Schreiber's death. After Mr. Schreiber's death, he explained his inaction was based on his lack of knowledge that he needed to file an action to legally establish filiation. Because peremption runs against everyone and is not suspended or interrupted, these reasons are not relevant to the ultimate decision on the declaratory judgment, but they illustrate that Article 197 in fact afforded Mr. Hutcheson ample time in which to assert his rights.

Mr. Hutcheson argues that Article 197's peremptive time period limits the ability to filiate timely because it is "controlled" by "adverse" actors, such as a mother and/or father, who possess the requisite information, but might prevent an illegitimate child's ability to filiate to a deceased father by withholding the information until after the peremptive period has elapsed. As the Succession

pointed out, the parents' action or inaction is not *state* action, and thus does not invoke constitutional concerns. And, we reiterate that in Mr. Hutcheson's particular case, his mother informed him of the fact of his paternity when he had ample remaining time to investigate and assert his claim.

Mr. Hutcheson also argues that the trial court erred in not allowing him to introduce hearsay evidence showing his attempts to investigate his paternity. He argues that the evidence was not introduced to prove the truth of the matter, *i.e.*, his paternity, but rather was admissible as evidence of his efforts to investigate his paternity. This evidence consisted of the substance of text messages and Facebook messenger messages between him and Mrs. Schreiber and Mr. Schreiber's sisters, as well as a screenshot of the Ancestry.com website allegedly showing that Mr. Hutcheson's DNA matched Mr. Schreiber's. Upon review, we find no error in the trial court's evidentiary rulings. Mr. Hutcheson has not shown that the evidence in question were exceptions to the hearsay rule, as per La. C.E. art. 803, or, in the case of the alleged screen shot from Ancestry.com, was properly authenticated, as per La. C.E. art. 901, *et seq.* Further, the declaratory judgment proceeding concerned the constitutionality of Article 197, which is a question of law, as previously stated herein. The hearsay evidence in question was not relevant to this legal question.[12]

Finally, we observe that Mr. Hutcheson is not precluded by Article 197's peremption from filing a proceeding to filiate to Mr. Schreiber for purposes other than the succession, as the time limitation in paragraph two applies only for "purposes of succession."

---

[12] Mr. Hutcheson argues that his evidence showed his due diligence investigating his paternity, which supports his claim that the court should order DNA testing. DNA testing is not relevant to the constitutional issues involved herein.

## CONCLUSION

For the foregoing reasons, upon *de novo* review, we agree with the trial court's ruling and conclude that La. C.C. art. 197 is constitutional.

## DECREE

The trial court's declaratory judgment of September 8, 2023, finding La. C.C. art. 197 constitutional, is affirmed. The matter is remanded to the trial court for further proceedings.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 20, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

# 24-CA-60

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JOSEPH A. MARINO, III (DISTRICT JUDGE)
HONORABLE GLENN B. ANSARDI (DISTRICT JUDGE)

GEORGE M. MCGREGOR (APPELLANT)
GRAHAM H. WILLIAMS (APPELLEE)
DAVID J. SMITH, JR. (APPELLEE)

ROBERT J. DAIGRE (APPELLANT)
M. SUZANNE MONTERO (APPELLEE)

WILLIAM R. PENTON, III (APPELLANT)
CHIMENE Y. ST. AMANT (APPELLEE)

## MAILED

CESAR R. BURGOS (APPELLANT)
ATTORNEY AT LAW
3535 CANAL STREET
SUITE 200
NEW ORLEANS, LA 70119

TERREL T. KENT (APPELLEE)
POST OFFICE BOX 94005
BATON ROUGE, LA 70804

MARTIN J. MCGUANE (APPELLANT)
MAURICE V. PIZA (APPELLANT)
ATTORNEYS AT LAW
365 CANAL STREET
SUITE 1015
NEW ORLEANS, LA 70130

KEVIN J. NACCARI, JR. (APPELLEE)
MEGHAN E. CARTER (APPELLEE)
ATTORNEY AT LAW
935 GRAVIER STREET
SUITE 2020
NEW ORLEANS, LA 70112